**Jessie L. KOPP, et al., Respondent,**

v.

**HOME FURNISHING CENTER, LLC, et al., Appellants.**

No. WD 65277.

Missouri Court of Appeals, Western District.

Oct. 31, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 19, 2006.

Application for Transfer Denied Jan. 30, 2007.

Michael Scott Dodig, Lee's Summit, MO, for appellant.

Dennis Edward Egan, Kansas City, MO, for respondent.

Before EDWIN H. SMITH, P.J., VICTOR C. HOWARD, and JAMES M. SMART, JR., JJ.

PER CURIAM.

Home Furnishing Center, L.L.C. ("HFC") appeals the trial court's entry of judgment in favor of Don Kopp and the Kopp Family Trust following a jury trial. The jury returned a verdict in favor of Don Kopp on his breach of contract claim against HFC. The court denied HFC's counterclaim against the Family Trust for attorneys' fees. The judgment is affirmed.

## Statement of Facts

This appeal arises from a lawsuit brought by Don Kopp and his mother, Jessie L. Kopp. Mrs. Kopp was trustee of the Kopp Family Trust. They brought suit against HFC and its principals, Kevin Fitzpatrick, Paul Goehausen, and John

Power, alleging breach of contract, fraudulent misrepresentation, and conspiracy to defraud. The allegations arose from contracts that were associated with HFC's purchase of property originally owned by Earl C. "Skip" Kopp, who is Don Kopp's brother and Jessie Kopp's son.

Kopexa Realty Venture was a partnership operated by Skip Kopp and his wife, Carolyn. Kopexa owned a shopping center known as the Home Furnishing Center in Lenexa, Kansas. United States Life Insurance Co. and All American Life Insurance Co. (collectively, "USLife") were mortgage holders on the shopping center. In 1995, Kopexa filed for protection from creditors under federal bankruptcy law. USLife initiated a foreclosure on the shopping center and, with the approval of the bankruptcy trustee, gained ownership via a credit sale. Litigation then ensued between Skip Kopp and USLife, including, among other things, a conversion claim that Skip Kopp brought when USLife removed his possessions from the shopping center.

USLife offered the shopping center for sale. Fitzpatrick, Goehausen, and Power—who later formed Home Furnishing Center, L.L.C. ("HFC")—sought to buy the shopping center. Goehausen had built a house for Skip Kopp and then repossessed it when Mr. Kopp defaulted in payments.

Both Don Kopp and the Kopp Family Trust held claims against Kopexa in the bankruptcy proceedings. Don Kopp's claim was for $350,000, and the Trust's was for $250,000. As a condition of the sale of the shopping center to HFC, USLife required HFC to resolve those claims. To that end, in August 1999, the parties entered into two separate contracts or settlement agreements that are central to this case. A Settlement Agreement and Mutual Release of All Claims, referred to as the "Global Settlement Agreement," was drawn up between USLife, HFC, Skip Kopp, the Kopp Family Trust, and other parties not relevant to this appeal. Don Kopp was not a party to that contract. A separate agreement was drawn up between HFC and Don Kopp. USLife's sale of the shopping center to HFC was dependent upon Don Kopp and the Trust agreeing to effectively eliminate their bankruptcy claims against Kopexa. Separately, Skip and Carolyn Kopp entered into an agreement with HFC under which they would regain the title to their home.

The agreement between HFC and Don Kopp provided, in short, that in return for HFC's $260,000 payment to Don Kopp upon closing the sale on the shopping center, Don would assign all his rights in the Kopexa bankruptcy action to HFC. Don Kopp agreed that during the pendency of HFC's due diligence on the shopping center he would not execute or prosecute any of his claims against Kopexa "until [HFC] closes on the Home Furnishing Center on or before October 14, 1999, whichever comes first [sic]." Don also agreed to seek continuances on his pending proceedings in the bankruptcy action. The agreement further provided that "[s]ale or assignment [of Don Kopp's bankruptcy claim] shall not be final until Don Kopp receives $260,000 from [HFC]." The agreement required Don to release any and all claims he may have held against various signatories of the Global Settlement Agreement. This list did not include Skip Kopp in his individual capacity. HFC agreed to pay Don Kopp $200,000 "upon [HFC's] successful closing on the Home Furnishing Center" and $60,000 from the proceeds of the bankruptcy action, "or otherwise." The final sentence of the agreement stated: "If the LLC does not close on the Home Furnishing Center, or if it does not close on it

before *October 14, 1999*,[1] then Don Kopp shall retain his assigns and rights and shall receive nothing from the LLC."

In September 1999, when it became apparent that HFC's due diligence would not be completed by October 14, HFC contacted Don Kopp's attorney, Don Loudon, and suggested an extension of the deadline. The parties agreed to an extension for "a reasonable time." Don Kopp wrote a letter to HFC on September 9, 1999, acknowledging the agreement to extend the deadline. That letter stated:

> [W]e regard the deadline of October 14, 1999, for closing ... as extended to allow reasonable completion of the due diligence. As long as you hold the right to buy said real property, your referenced Purchase Agreement ... with our client, Don A. Kopp, remains in place.

The letter also listed actions undertaken by Don Kopp in reliance on that agreement, including obtaining a continuance of his appeal before the Bankruptcy Appellate Panel ["BAP"] and seeking a continuance from the bankruptcy court on his other claims.

At some point, the parties discussed a possible closing date of November 30, 1999. On November 1, 1999, Don Kopp's attorney sent a letter to HFC informing HFC that "unless you no longer have a right to purchase the Home Furnishing Center, we will expect [payment] on or before November 30, 1999[.]" Don Kopp's attorney also informed the bankruptcy court that closing was expected to be complete by November 30. The real estate transaction did not close by November 30, 1999. Although the parties did not discuss any further extensions, they continued to act as though the agreement was still in effect.

Sometime in December, an amendment was made to Skip and Carolyn Kopp's separate agreement with HFC. The Kopps agreed, in that amendment, to deliver the Global Agreement fully executed by the Kopp Family Trust within twenty-four hours prior to closing in exchange for HFC dropping its requirement of $60,000 in rental payments from them. As of the first part of February, Jessie Kopp, trustee of the Kopp Family Trust, still had not signed the Global Agreement. Obtaining her signature was a condition of USLife's agreement to sell. According to HFC, failure to obtain that signature would make closing on the real estate transaction "unlikely."[2]

On February 11, 2000, the Bankruptcy Appellate Panel (BAP) handed down a decision affirming the lower court's denial of Don Kopp's "Motion to Clarify" in the Kopexa bankruptcy action. The purpose of that Motion was to determine what leases or subleases were transferred to USLife when it obtained the shopping center in the credit sale. Kevin Fitzpatrick, one of the HFC principals, testified that he mistakenly believed that this ruling effectively eliminated all of Don Kopp's claims in the bankruptcy court. John Power, also an HFC principal, indicated at trial that, at one point, he believed the same.

On February 18, Don Kopp's attorney received a phone call from John Power in behalf of HFC inquiring whether Don and Skip had agreed as to whether the

---

1. The original wording, "the November 10, 1999 Motion," is lined through, and "October 14, 1999" is handwritten in above it. The parties agree that this change was made by HFC before the contract was presented to Don Kopp.

2. Jessie Kopp *had signed* an earlier version of the Global Agreement sometime in May 1999. That version was subsequently abandoned because it did not include Don Kopp's signature, and USLife refused to close without his signature at that point.

$260,000 payment would fully satisfy Skip's obligations to Don. At some point, the brothers met and agreed that the issue would be resolved between them and had no effect on Don Kopp's right to receive payment under his agreement with HFC.

Shortly thereafter, on February 22, John Power sent Don Kopp's attorney a letter, stating that the deal between HFC and Don Kopp was "null and void and no longer of any force and effect." The reason cited was "an ancillary dispute [between the brothers] not related to the underlying transaction, thereby frustrating the completion of this transaction." According to testimony at trial, HFC's reference to the unspecified "ancillary dispute" was referring to a disagreement between Skip and Don as to whether the $260,000 in the agreement would fully satisfy a federal judgment Don held against Skip.[3] HFC purportedly had surmised that somehow this "ancillary dispute" was causing Skip to avoid getting Jessie Kopp's signature on the Global Agreement. Don Kopp's reply to the February 22 letter, through his attorney, rejected HFC's claim that Don's agreement had become null and void, though it acknowledged that Skip and Don had not fully resolved their disagreement.

On February 25, Skip Kopp received an eviction notice from HFC. Because the agreement for Skip Kopp to regain ownership of his house was dependent upon full execution of the Global Settlement Agreement, and because Jessie Kopp had not signed that agreement, HFC gave Skip thirty days' notice to vacate his house in accordance with the terms of their separate agreement. Two days later, Jessie Kopp signed the Global Agreement on be-

half of the Family Trust. The next day thereafter, Skip finally signed the amendment agreeing to obtain the "Trust's" signature.

In the meantime, the sale of the shopping center to HFC was proceeding toward closing. On March 31, 2000, USLife and HFC executed an amendment to the Global Agreement that specifically deleted any reference to the claims of Don Kopp. None of the individual Kopps or Kopp entities were asked to sign this amendment although they were signatories on the original Global Agreement. The real estate transaction between USLife and HFC closed on April 5, 2000. No payment was issued to Don Kopp.

Don Kopp continued to pursue and hold his claims in the Kopexa bankruptcy action and stood ready to allow HFC to take over his claims as assignees. Following the real estate closing, Don Kopp notified the bankruptcy court that HFC was now the real party in interest since it had purchased—although it had not yet paid for—his claims. HFC never appropriated any of Don Kopp's claims in the bankruptcy action.

In September 2001, Don Kopp and Jessie L. Kopp, in her capacity as the trustee of the Kopp Family Trust,[4] filed a petition against USLife, HFC, Kevin Fitzpatrick, Paul Goehausen, and John Power. The petition alleged breach of contract, fraudulent misrepresentation and conspiracy to defraud, and tortious interference with contractual rights. HFC filed a counterclaim against the Kopp Family Trust, seeking attorneys' fees under the Global Agreement. Prior to trial, the court

---

**3.** The evidence is not completely clear on this point, but we gather that the federal judgment Don held against Skip was the basis of Don's claim in the Kopexa bankruptcy.

**4.** Jessie Kopp died in February 2003, prior to trial. A successor trustee represented the Family Trust in the lawsuit following Mrs. Kopp's death.

granted USLife's motion for summary judgment.

The case against the remaining defendants was tried before a jury over nine days in May 2004. In support of his breach of contract claim, Don Kopp argued that he had performed everything required of him under the contract and had relied on the contract to his detriment. He also argued that the only fact necessary to trigger HFC's obligation to pay him under the contract was the successful closing on the purchase of the shopping center. The closing did occur; and HFC did not pay him, thereby breaching the contract. Don Kopp attempted to show that HFC reneged on the contract, not because the extension of the contract had expired, nor for the reasons given in their February 22nd letter, but because they mistakenly believed that the BAP's February 11 ruling rendered Kopp's bankruptcy claims worthless. HFC argued that the contract had expired before the April 5, 2000 closing on the real estate transaction—either on November 30, 1999, or if not then, then as of February 22, 2000—and, thus, it was not required to pay Don Kopp.

Before the case was submitted, the Kopps abandoned their claims against Fitzpatrick, Goehausen, and Power as individuals. Don Kopp's claim for breach of contract against HFC and the Trust's claim of fraudulent misrepresentation against HFC were submitted to the jury.

The jury returned a verdict in favor of Don Kopp on his contract claim, awarding him $260,000 in damages. The jury ruled against the Kopp Family Trust on its fraud claim. The court denied HFC's counterclaim for attorneys' fees from the Trust following a separate hearing in September 2004.

HFC appeals.

## Point I: No Contract as a Matter of Law

HFC argues that the trial court erred in denying its motion for directed verdict on Don Kopp's breach of contract claim. HFC says Don Kopp could not prevail on the contract claim, as a matter of law, because the agreement had expired before the April 5th closing date. Hence, there was no valid contract, and the claim should not have been submitted to the jury. The contention in Point I overlaps the contention of Point III that the court erred in submitting the case because there was insufficient evidence warranting submission. Therefore, we will consider Points I and III together.

### Standard of Review

The standard of review is essentially the same for the denial of a motion for JNOV and a motion for directed verdict. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456 (Mo. banc 2006). The question is whether the plaintiff has made a submissible case. We view the evidence in the light most favorable to the verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding conflicting evidence and inferences. *Id.* at 456–57. We will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support it. *Id.* at 457.

### Analysis

■ HFC says that the facts were undisputed that there was no deadline extension through April 5, 2000; therefore, the court was obligated to find, as a matter of law, that the deadline was not so extended, and the matter should not have gone to the jury. HFC notes that if the terms of a contract are clear and unambiguous, the

contract will be enforced in accordance with those terms, citing *Willman v. Beheler*, 499 S.W.2d 770, 774 (Mo.1973). They say the agreement's terms[5] are clear and unambiguous in providing that if the sale of the shopping center does not close on or before October 14, 1999, then Don Kopp shall retain his bankruptcy claim and shall receive nothing from HFC. HFC acknowledges that the October 14 deadline was extended by agreement of the parties. According to HFC, the evidence showed that both parties believed it was extended to November 30 as a reasonable period of time. HFC argues that after that date, the deadline was extended on a day-to-day basis and was terminable at will by either of the parties.

We think that version of the facts is simply HFC's version. We cannot adopt that version as a matter of law because there was a factual dispute requiring submission to the jury. It is undisputed that the October 14, 1999, deadline was extended at *HFC's* request. HFC has its version of that extension. Don Kopp also had his version.

### Plaintiff's Evidence Was That The Contract Was Extended Beyond October 14, 1999, For As Long As Reasonably Necessary To Allow The Closing Of The Shopping Center Transaction

Don Kopp's version is that he agreed to extend the deadline for any reasonable amount of time necessary to get the closing completed. It was HFC and not Don Kopp that requested the extension. Don Kopp's version is that he agreed to it in order to allow HFC to complete its due diligence with regard to the sale property. The actions of the parties up to November 30, and continuing thereafter, also indicated that the parties, in effect, modified the agreement by extending it indefinitely to the closing, whenever that would occur, without reference to a particular date. The evidence is consistent with this assertion. It is consistent with the notion that the dynamics of the contract never changed after September 9, 1999, when Don Kopp's letter, acknowledging agreement to the extension, stated: "[W]e regard the deadline of October 14, 1999, for closing . . . as extended to allow reason-

---

5.  The pertinent terms of the agreement were as follows:

> Don Kopp agrees to sell or assign all rights, title and interest in any and all proof of claims filed in the Kopexa Bankruptcy estate, including his November 10, 1997 *Motion to Determine Asset Status* before the Bankruptcy Court, . . . to the LLC . . . and shall not assert any further claim in such estate inconsistent with this Agreement or those assigns. Such sale or assignment shall not be final until Don Kopp Receives $260,000 from the LLC. However, Don Kopp agrees that during the pendency of the LLC due diligence on the Home Furnishing Center he will not execute or prosecute any of his claims or causes of action until the LLC closes on the Home Furnishing Center on or before October 14, 1999, whichever comes first [sic]. Don Kopp further agrees that he will seek a continuance from the September 14, 1999

> BAP Hearing and his September 23, 24, 1999 trial date [sic] for at least thirty (30) additional days.
> Don Kopp further agrees to release any and all claims he may hold *against* [the various signatories to the Global Settlement Agreement except for Skip Kopp, personally].
> In return for the foregoing, the LLC agrees to pay Don Kopp $200,000 upon the LLC's successful closing on the Home Furnishing Center. The LLC further agrees to pay Don Kopp $60,000 from the proceeds the LLC receives from the Kopexa bankruptcy estate *or otherwise*. *D.K.* If the LLC does not close on the Home Furnishing Center or if it does not close on it before ~~the November 10, 1999 Motion~~ *October 14, 1999*, then Don Kopp shall retain his assigns and rights and shall receive nothing from the LLC. [Handwritten changes are represented by italic superscript.]

able completion of due diligence. *As long as you hold the right to buy said real property, [the agreement] remains in place."* (Emphasis added.)

With regard to the purported November 30 deadline, Don Kopp's attorney testified:

Well, we didn't extend [the deadline] to November 30th. We did it for a reasonable time, whatever it took in good faith to accomplish getting the parties to a closing. And I didn't know any precise date. I just knew that they had some work to do to get to the closing stage.

Don Kopp's attorney indicated that although at one point that he thought HFC's due diligence would be completed by November 30, he did not regard it as a new deadline. He and Don Kopp understood that the contract was extended for the length of time that it took for HFC to close on the shopping center, so long as that was reasonable. When asked at trial if he considered six months reasonable, Don Kopp's attorney stated: "Well, I thought it would be whatever it took as long as there were good-faith efforts being made to reach the closing."

The parties continued to act as if the extension was in force long after November 30. For example, on December 8, 1999, Don Kopp's attorney sent a letter to John Power, in anticipation of a December 9 closing, reminding him that closing on the shopping center "triggers" HFC's obligation to pay Don Kopp $260,000. Power admitted receiving that letter. Don Kopp's attorney, Don Loudon, received no response from Power refuting that contention. Loudon sent a letter on December 22, 1999, to the title company, copying John Power, which referred to the required payment to Don Kopp upon closing. Again, Power received the letter but never responded to it. Also on December 22, Don Kopp sent the title company a fully executed copy of a dismissal of his appeal

in the Kopexa bankruptcy action, to be filed upon closing. In an addendum to the Global Agreement, signed by HFC on January 10, 2000, HFC warranted to USLife that it had obtained "valid assignments of the claims of Don Kopp and the Kopp Family Trust." On January 14, Don Kopp filed a motion for continuance in bankruptcy court, requesting a continuance until after closing and informing the court that upon closing, HFC will own his bankruptcy claims. In mid-February, John Power called Don Kopp's attorney to discuss the agreement.

The evidence shows that the parties continued to act as though the agreement were in effect until HFC sent its February 22, 2000 letter declaring the deal "null and void." Don Kopp also continued to take actions to preserve his claim in the bankruptcy estate.

According to HFC, once the new deadline of November 30 had passed, the deadline was then "extended on a day-to-day basis by the conduct of the parties" and was "at-will" as long as both parties agreed to continue. HFC cites no law supporting the proposition that this contract was terminable at will by either party. HFC cites *Armstrong Business Services, Inc. v. H & R Block,* 96 S.W.3d 867, 874–78 (Mo.App.2002), for the well-known proposition that an agreement of "indefinite duration" is terminable at the will of one of the parties. HFC acknowledges, however, that this was not such an agreement. This contract contemplated an end date when the sale of the property closed. Nevertheless, HFC insists erroneously that when it expressed its desire in the February 22 letter not to continue to extend the deadline, the contract then expired by its own terms.

■ On disputed facts, where fair-minded persons could disagree, what consti-

tutes a reasonable period of time under a contract is a jury question. *Detmer v. Miller*, 220 S.W.2d 739, 743 (Mo.App.1949). *See also Bell v. May Dep't Stores Co.*, 6 S.W.3d 871, 875 (Mo. banc 1999) (reasonable time for rejecting defective goods under a contract is a jury question). In making this determination, the jury may consider the conduct of the parties and the surrounding circumstances. *See Bell*, 6 S.W.3d at 875 (the actions of the parties may affect what constitutes a reasonable time).

■ Neither the evidence nor the law supports HFC's contention that this contract became, as a matter of law, unilaterally and immediately terminable at will after November 30. The jury could have concluded that the facts were such that HFC's position breached the implied covenant of good faith and fair dealing that inhered in the contract. *See Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo.App.1986). That duty prevents one party from acting in "such a manner as to evade the spirit of the transaction or ... to deny the other party the expected benefit of the contract." *Id.* Don Kopp had performed everything required of him under the contract. The jury could have believed that HFC could not unilaterally and instantaneously decide what constitutes a "reasonable period" for the deadline extension based on what benefits it most.

During the many months the extension dragged on, HFC never disputed the assertion of Don Kopp's attorney that as long as HFC held the right to buy the shopping center, the deal with Don Kopp remained in effect. There was ample evidence from which the jury could have concluded that the February 22 "the-deal-is-off" letter was prompted, not by any deadline expiration or by a dispute between the brothers, but, instead, by HFC's mistaken belief that the bankruptcy ruling [that neither party explains] had negatively affected Don Kopp's claims in the bankruptcy court. The jury could reasonably conclude the contract was still in effect as reasonably extended. *See Union Wholesale Lumber Co. v. Milne Lumber Co.*, 251 S.W. 464, 466 (Mo.App.1923) (what is a reasonable time "depends upon the nature of the contract and the particular circumstances attending the transaction").

The February 22 letter, which purportedly cancelled the agreement due to an "ancillary dispute, *not related to the underlying transaction,*" cited no contingency or provision in the agreement that justified terminating the contract. It gave no explanation as to how the existence of this "dispute" legally justified HFC's position in declaring the agreement terminated. It also offered no grace period in which to address any deficiency in contract performance.

HFC did not contend that the bankruptcy ruling gave them legal cause to declare the contract terminated. Nor did HFC assert legal grounds for their action other than the notion that the "reasonable extension" had expired and was terminable at will.[6]

For all these reasons, the evidence could have been reasonably viewed by the jury as failing to provide any basis for HFC to unilaterally and instantaneously declare the agreement null and void when HFC still intended to close on the property. Don Kopp made a submissible case.

---

**6.** HFC may have speculated that Jessie Kopp would not sign the Global Agreement so long as Don and Skip Kopp could not resolve their disagreement. However, Don Kopp's agreement with HFC was not contingent on getting the Trust's signature on the Global Agreement. HFC had also agreed to give 24 hours notice to Skip Kopp to get it signed.

There was ample evidence for the jury to decide that HFC breached the contract. HFC's Point I and Point III are denied.

## Point II. Instructional Error

In Point II, HFC contends that the court erred in giving Instruction No. 7, the verdict director on the contract claim, because the instruction assumed disputed ultimate facts, submitted abstract legal questions to the jury, and allowed the jury a "roving commission."

### *Standard of Review*

■■ Whether a jury was properly instructed is a question of law, which this court reviews *de novo*. *Harvey v. Washington*, 95 S.W.3d 93, 98 (Mo. banc 2003). We will reverse only if the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error. *Id.* We view the evidence most favorably to the instruction and disregard contrary evidence. *Moore ex rel. Moore v. Bi–State Dev. Agency*, 87 S.W.3d 279, 293 (Mo.App. 2002). A proper instruction submits only the ultimate facts, not evidentiary details. *Id.*

### *Analysis*

■■ A verdict director must require the jury to find all ultimate issues or elements necessary to the plaintiff's case. *Harvey*, 95 S.W.3d at 97. HFC says it was error for the trial court to submit Don Kopp's instruction, because it omitted a necessary, disputed element of the purported agreement: "Whether the deadline had been extended and under what terms."

Echoing their other points, HFC contends it was error for the court to fail to determine the issues regarding the existence and terms of the agreement prior to submitting the case to the jury.

The verdict director as given stated:

Your verdict must be for Plaintiff Don Kopp and against Defendant if you believe:

*First,* Plaintiff and Defendant entered into an agreement whereby Plaintiff agreed to sell or assign all rights, title and interest in any and all proof of claims filed in the Kopexa Bankruptcy Estate to [HFC], and by not asserting any such further claim in such estate inconsistent with his agreement or those assigns, and Defendant agreed to pay Plaintiff the total sum of $260,000 after the closing on the purchase of the Home Furnishing Center, and

*Second,* Plaintiff performed his agreement, and

*Third,* Defendant failed to perform its agreement, and

*Fourth,* Plaintiff was thereby damaged.

The pertinent provisions of HFC's proposed verdict director read: [7]

Your verdict must be for Plaintiff Don Kopp and against Defendant Home Furnishing Center, LLC if you believe:

*First,* Plaintiff Don Kopp and Defendant Home Furnishing Center, LLC entered into an agreement whereby Plaintiff agreed to sell or assign all right, title and interest in ... claims filed in the

---

**7.** Don Kopp argues that this point should be denied because the appellants have violated Rule 84.04 by failing to set forth their proposed instruction in the argument. HFC contends that it was not required to include the "proposed" instruction because it was contesting the "giving" of Don Kopp's instruction, and it set out *that* instruction in their argument. We are doubtful about HFC's interpretation of the Rule. In any event, it would be good advocacy to set out in the argument the proposed instruction that HFC claims is better than the one given. However, we will, *ex gratia*, review the contention that the court gave an improper instruction.

Kopexa Bankruptcy Estate to [HFC] ... and Defendant agreed to pay Plaintiff the total sum of $260,000 upon the closing of the purchase of the Home Furnishing Center *if such purchase occurred before the extended deadline,* and

*Second,* Plaintiff performed his agreement, and

*Third, the closing of the purchase of the Home Furnishing Center occurred before the expiration of the extended deadline* and Defendant failed to perform its agreement, and

*Fourth,* Plaintiff was thereby damaged. [Significant differences underlined.]

The primary difference in HFC's proposed instruction and the one given is that the proposed instruction asks the jury to determine whether the closing on the real estate transaction "occurred before the expiration of the extended deadline." The verdict director proffered by HFC assumes an expired deadline extension. Because there was a disputed issue as to whether there was an effective expiration date, it would have been improper to include that element in the verdict director. Assuming a disputed fact is error. *Harvey,* 95 S.W.3d at 97.

■ The instruction that was given followed MAI 26.06 and, while not worded in the most artful way, properly framed the ultimate issues consistent with plaintiff's theory of the case, as required. Jury instructions are required to be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." *Graham v. Goodman,* 850 S.W.2d 351, 354 (Mo. banc 1993) (*citing* Rule 70.02(a)). The question of the deadline extension was an evidentiary fact related to whether Defendant HFC failed to perform the agreement. Whether a deadline existed was not an "ultimate fact" necessary to submit to the jury; therefore, it was proper not to include it.

Don Kopp suggests that if HFC truly believed this was an "ultimate factual" question, it could have submitted an "affirmative converse instruction," citing *Graham,* 850 S.W.2d at 354. *See also Hiers v. Lemley,* 834 S.W.2d 729, 735–36 (Mo. banc 1992).

Also, even if the wording was not quite proper (instead of saying "and to not assert ...," the instruction said "and by not asserting ..."), there is no indication that the instruction misdirected, misled, or confused the jury. *See Gorman v. Wal–Mart,* 19 S.W.3d 725, 730 (Mo.App.2000); *see also Harvey,* 95 S.W.3d at 97 (unlike this case, the jury confusion was obvious). HFC does not argue or demonstrate either error or prejudice from the instruction. Point denied.

### Point IV. Attorneys' Fees

HFC contends that the trial court erred in denying its counterclaim for attorneys' fees, because HFC had a contractual right under the Global Settlement Agreement to recover attorneys' fees, and it provided uncontroverted evidence of such fees.

### *Standard of Review*

■ We review the denial of a request for attorneys' fees for an abuse of discretion. *Bldg. Erection Services Co. v. Plastic Sales & Mfg. Co.,* 163 S.W.3d 472, 480 (Mo.App.2005). A court abuses its discretion when its action is so clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Anglim v. Mo. Pacific R.R. Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992).

### Analysis

██ Don Kopp alleged in his petition that as an "intended beneficiary" and "affiliate or assign of parties to the Global Settlement Agreement," he was entitled to recover his attorneys' fees and expenses of this litigation. According to HFC, this triggered the attorneys' fees provision in the Global Agreement, which states:

> [S]hould a third party assert ... a claim ... against or interest in the subject matter of this [Global] Agreement in a derivative manner, the party from whom the third-party's claim of right is derived ... shall ... pay such damaged party's reasonable attorneys' fees and costs.

HFC brought a counterclaim against the Trust to recover its attorneys' fee in the action brought by Don Kopp on the basis of his claim for attorneys' fees. The court held a bench trial on the claim, at which the only evidence presented was over $100,000 in billings from HFC's attorneys and Kevin Fitzpatrick's unenlightening testimony about those billings. The court denied the claim. HFC says the court erred in doing so because it had a right to reimbursement from the Trust for the fees that pertained to Don Kopp's claims.

Although Don Kopp originally pleaded a claim for attorneys' fees pursuant to the Global Agreement, that claim was never pursued. The breach of contract claim Don Kopp did pursue clearly arose from his own contract with HFC. That agreement did not include a provision for attorneys' fees. Don Kopp's breach of contract claim did not assert a "claim against" or "interest in the subject matter of the Global Agreement" (other than the attorney's fee provision itself) nor was it brought pursuant to that agreement "in a derivative manner." Thus, there was no contractual right for an award of attorneys' fees. Even if such a right had been shown, one must still be a prevailing party. *See, e.g., Hoag v. McBride & Son Inv. Co.*, 967

S.W.2d 157, 175 (Mo.App.1998) (a party may only recover its attorney fees under a contract provision if it is the prevailing party). HFC prevailed on the fraud claim brought by the Family Trust, but it was not the prevailing party on the claim as to which it now seeks to recover attorneys' fees, *i.e.*, Don Kopp's breach of contract claim.

The decision to deny an award of attorneys' fees is reviewed for an abuse of discretion. *Bldg. Erection*, 163 S.W.3d at 480. We find no abuse of discretion in the court's denial of this claim. Point denied.

### Conclusion

For the foregoing reasons, the judgment is affirmed.