

*In the*

*Missouri Court of Appeals*

*Western District*

| | |
|---|---|
| **STEPHEN A. OLIVER, ET AL.,** | **WD75585 Consolidated with WD75619** |
| **Appellant-Respondents,** | |
| **v.** | **OPINION FILED:** |
| **FORD MOTOR CREDIT COMPANY, LLC, ET AL.,** | **APRIL 29, 2014** |
| **Respondent-Appellants,** | |
| **SHERI GERSTNER,** | |
| **Respondent.** | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jack Richard Grate, Judge**

**Before Division Three: Anthony Rex Gabbert, P.J.,**
**Victor C. Howard, Thomas H. Newton, JJ.**

Stephen A. Oliver, Steve Oliver Imports, LLC, and Oliver Family Partnership ("Oliver")[1]

appeals the circuit court's judgment that Oliver breached his contract with Ford Motor Credit

Company ("FMCC"). Oliver raises seven points on appeal. Oliver argues that the trial court

erred in: (1) granting FMCC's motion for directed verdict on his fraud by silence claim; (2)

rejecting his proposed verdict directors and refusing to submit any instruction on fraud by silence

---

[1] We will reference Stephen A. Oliver, Steve Oliver Imports, LLC, and Oliver Family Partnership simply as "Oliver," except where a distinction between the parties is needed.

and negligent misrepresentation by silence; (3) granting FMCC's motion for directed verdict on his tortious interference with business expectancy claim; (4) overruling his objections and submitting FMCC's counterclaims in a single MAI 26.02 verdict directing instruction; (5) entering a directed verdict in favor of FMCC on the issue of his expectancy damages and giving a withdrawal instruction that the jury must disregard such evidence; (6) overruling his objections to FMCC's introduction of extensive evidence of his hunting experiences, taxidermy hobby, and game farm operation; and (7) denying his request that the jury be advised of his hospitalization with a serious ailment during the course of the trial. Additionally, FMCC filed a cross-appeal arguing that the circuit court erred in denying its motion to alter or amend the judgment for entry of FMCC's attorneys' fees, costs and expenses, and interest. We affirm.

## Factual Background[2]

Oliver purchased a Mazda dealership in September 2007. Oliver used FMCC financing to purchase the dealership and signed several contracts, including a personal guaranty on the loans. The dealership that Oliver purchased had been losing money and continued to do so. In September 2008, FMCC sent Oliver a "go away" letter that stated that Oliver needed to find other financing for his dealership as FMCC would no longer be financing his dealership. Pursuant to a contract that Oliver signed, either party could terminate the financing agreement upon 30 days notice. Having been a dealer for many years, Oliver had signed eight other agreements with FMCC with the same termination provision. FMCC provided Oliver with several financing extensions in order for Oliver to find other financing. Despite these extensions, Oliver was unable to acquire other financing. As a result, Oliver closed the dealership in March 2009. At the time of closing, Oliver had sustained more than $1.4 million in losses.

---

[2]Additional facts are presented under the relevant points below.

Oliver sued FMCC and FMCC employee Sheri Gerstner for fraudulent and negligent misrepresentation alleging that FMCC promised him permanent captive dealer financing and this representation induced him into buying the Mazda dealership and using FMCC dealer financing. He claimed that he later learned that FMCC had a "secret plan" to eliminate Mazda financing and had he known that information he never would have bought the Mazda dealership.

FMCC filed a counterclaim seeking payment for amounts Oliver owed under the financing agreement. Oliver admitted to the jury that he would owe FMCC money if the jury rejected his claim of fraudulent misrepresentation. After an 11-day trial, the jury found against Oliver on his claims for fraudulent and negligent misrepresentation and in favor of FMCC on its counterclaim for breach of contract. The jury awarded FMCC $778,643. The trial court entered judgment on the verdict. FMCC moved to amend the judgment to award it attorneys' fees, costs and expenses, and interest. Oliver opposed the request. The trial court did not rule on FMCC's motion and by operation of law it was denied. Oliver appealed the judgment and FMCC filed a cross-appeal seeking a reversal of the trial court's judgment denying FMCC's request for attorneys' fees, costs and expenses, and interest.

## I.  Fraud by Silence

In Oliver's first point on appeal, he argues that the trial court erred in granting FMCC's motion for directed verdict on his fraud by silence claim. Oliver contends that fraud by silence is recognized as an independent cause of action and was properly submitted to the jury. We find no err.

The standard of review for the circuit court's grant of FMCC's motion for directed verdict is whether Oliver made a submissible case. *Investors Tile Co., Inc. v. Hammonds*, 217 S.W.3d 288, 299 (Mo. banc 2007). "A case may not be submitted unless each and every fact essential to

3

liability is predicated upon legal and substantial evidence." *Id.* "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Blue v. Harrah's N. Kansas City, L.L.C.*, 170 S.W.3d 466, 472 (Mo. App. 2005). "When deciding whether the plaintiff made a submissible case, we view the evidence and all reasonable inferences from it in the light most favorable to the plaintiff and disregard all evidence to the contrary." *Id.* If the denial of a directed verdict is based upon a conclusion of law, we review the circuit court's decision de novo. *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 521 (Mo. App. 2007).

At the close of all of the evidence, FMCC continued its directed verdict motion as to the fraud by silence claim and argued that Oliver's fraud by silence claim went to the falsity element of Oliver's fraudulent misrepresentation claim. Oliver's counsel, however, argued at trial that "[t]he fact of the matter is the fraud by silence is an entirely different tort. It has entirely different elements." Oliver further argued that an entirely separate instruction should be given for the fraud by silence claim.[3] The court granted FMCC's motion for a directed verdict stating that the fraud by silence claim goes to the falsity element of Oliver's fraudulent misrepresentation claim. We find no err in the court granting FMCC's motion for directed verdict.

In *Hess v. Chase Manhattan Bank*, 220 S.W.3d 758 (Mo. banc 2007), the Missouri Supreme Court stated: "This Court has not recognized a separate tort of fraudulent nondisclosure…Instead, in such cases, a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." *Id.* at 765. This is because "a

---

[3] We note that Oliver tried amending his petition on two different occasions to add the fraud by silence claim but the court denied both motions.

party's silence amounts to a representation where the law imposes a duty to speak." *Id.* (citing *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993)). Even though, however, a party's silence in the face of a legal duty to speak replaces the first element of the existence of a representation, "[t]he same nine elements required to establish fraud by an affirmative misrepresentation must be proven in a fraud by silence claim." *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo. App. 2009) (internal quotations & citations omitted). Therefore, contrary to Oliver's argument and pursuant to Missouri case law, fraud by silence does not have separate elements from fraudulent misrepresentation and is not a separate tort.

While *Hess* does state that a party's legal duty to speak replaces the first element of an existence of a representation, under the facts of this case, the fraud by silence claim that Oliver alleged actually went to prove the falsity element of his fraudulent misrepresentation claim. Oliver alleged that FMCC made two misrepresentations. First, Oliver alleged that FMCC represented to Oliver that permanent, captive dealer financing would be available going forward in the operation of the dealership.[4] Second, Oliver alleged that FMCC represented to Oliver that Chase Auto Finance ("Chase") was not going to begin providing dealer financing to Mazda dealers.

In order to show that FMCC's first representation was false, Oliver presented evidence that FMCC had a "secret plan" to eliminate Mazda financing before Oliver entered into the contract but failed to tell him. Instead, FMCC represented to Oliver that it would provide Oliver with permanent, captive dealer financing going forward in the operation of the dealership.

---

[4] What may be the most damning evidence in Oliver's fraudulent misrepresentation claim is the contract that he entered into with FMCC which contained a provision stating that either party could step away from the financing agreement for any reason as long as 30-days notice was given. Oliver testified that he had signed eight other financing agreements with FMCC containing similar provisions and that he had used this provision before in order to end a prior financing agreement with Chrysler.

However, the basis for Oliver's fraud by silence claim is that FMCC was silent regarding its plan to eliminate Mazda financing.

Furthermore, in order to prove that FMCC's second representation regarding Chase financing was false, Oliver presented evidence that Chase took over FMCC's Mazda financing after FMCC had earlier told Oliver that Chase would not be taking over the financing. Similarly to FMCC's silence in regards to its plan to eliminate Mazda financing, FMCC's silence about Chase taking over the financing was the basis for Oliver's fraud by silence claim.

Essentially, Oliver is taking the same facts to prove his fraudulent misrepresentation claim to prove his fraud by silence claim. And in order to make them appear to be different torts Oliver focuses his argument on the fact that fraudulent misrepresentation deals with an affirmative representation while fraud by silence deals with remaining silent when one has a legal duty to speak. However, under the facts of this case and following Missouri case law, the fraudulent misrepresentation claim and fraud by silence claim are not separate torts as Oliver alleged. Therefore, the trial court did not err by granting FMCC's motion for a directed verdict on Oliver's fraud by silence claim. Point one is denied.

## II. Fraudulent & Negligent Misrepresentation by Silence

In Oliver's second point on appeal, he argues that the trial court erred in rejecting his proposed verdict directors and refusing to submit any instruction on his fraud by silence and negligent misrepresentation by silence claims. We find no err because we found in point one above that the trial court did not err in granting FMCC's motion for directed verdict on Oliver's fraud by silence claim. As a result, a jury instruction on Oliver's fraud by silence claim would be inappropriate. Additionally, because Oliver's negligent misrepresentation by silence claim uses

6

the same reasoning as the fraud by silence claim, a jury instruction for Oliver's negligent misrepresentation by silence claim would also be inappropriate. Point two is denied.

### III. Tortious Interference with Business Expectancy Claim

In his third point on appeal, Oliver claims that the trial court erred in granting FMCC's directed verdict on his tortious interference with business expectancy claim. He contends that Oliver was not required to elect his remedy before submission of the case to the jury and the claim was supported by substantial evidence. Oliver further argues that there was substantial evidence that FMCC intentionally interfered with Oliver's reasonable expectation of being able to sell Mazda cars to consumers through the use of FMCC's dealer financing when FMCC failed to disclose its intentions to sever dealer financing with Mazda and Oliver. As a result, Oliver was damaged. We find no err.

This Court reviews the circuit court's refusal to give an instruction for an abuse of discretion. *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 97 (Mo. banc 2010). The failure to submit an instruction to which a party is entitled is error and will warrant reversal when the merits of the case have been materially affected. *Allison v. Sverdrup & Parcel & Assocs., Inc.*, 738 S.W.2d 440, 454 (Mo. App. 1987). In reviewing the evidence to determine if it will support an instruction, this Court views the evidence in the light most favorable to the proponent of the instruction. *Id.*

"A claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d

7

369, 372 (Mo. banc 1990). "An action for tortious interference with a business expectancy will lie against a third party only." *Zipper v. Health Midwest*, 978 S.W.2d 398, 419 (Mo. App. 1998). "Where the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference." *Id.*

Oliver's proposed jury instruction for tortious interference stated in part:

First, Stephen A. Oliver or Steve Oliver Imports or Oliver Family Partnership had a valid business expectancy in selling or leasing vehicles to consumers *using financing provided by Ford Motor Credit Company*,
…
Third, *Ford Motor Credit Company intentionally interfered with such expectancy* by inducing Stephen A. Oliver or Steve Oliver Imports or Oliver Family Partnership to purchase Rob Sight Mazda… (italics added).

Here, Oliver claims that he had a business expectancy *using financing provided by FMCC* (emphasis added). He further claims that it was FMCC that intentionally interfered with this business expectancy. Thus, Oliver has a business expectancy using FMCC financing but claims that FMCC was the one who interfered with his business expectancy. Under this claim, however, FMCC is not a third party.[5] "An action for tortious interference with a business expectancy will lie against a third party only." *Farrow v. Saint Francis Medical Center*, 407 S.W.3d 579, 602 (Mo. banc 2013) (quoting *Zipper*, 978 S.W.2d at 419) (internal quotations omitted). Therefore, because FMCC is not a third party, the trial court did not err by granting FMCC a directed verdict for Oliver's tortious interference with business expectancy claim. Point three is denied.

### IV. Jury Instruction on FMCC's Counterclaim

---

[5] We note that even Oliver's suggested amended instruction, which was rejected by the trial court, would not change our conclusion because the only amended part of the instruction still stated that FMCC intentionally interfered with Oliver's business expectancy using financing provided by FMCC.

8

In his fourth point on appeal, Oliver argues that the trial court erred by overruling his objections and submitting FMCC's breach of contract counterclaims in a single MAI 26.02 verdict directing instruction. Oliver contends that the instruction impermissibly combined separate claims against Steve Oliver Imports, LLC and Stephen A. Oliver, as well as combined four separate purported contracts into a single instruction. Oliver further argues that the instruction impermissibly followed MAI 26.02 instead of MAI 26.06. We find no err.

"Whether a jury was properly instructed is a question of law this Court reviews de novo." *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010) (citing *Bach v. Winfield-Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008)). All instructions "shall be given or refused by the court according to the law and the evidence in the case." Rule 70.02(a). If an erroneous instruction has misdirected, misled, or confused the jury, the error is prejudicial and the jury's verdict should be reversed. *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 463 (Mo. banc 1998).

Oliver first argues that the trial court erred in giving the jury instruction for FMCC's counterclaim because the instruction incorrectly combined four breach of contract claims against two different parties and four different agreements into a single instruction. We disagree.

"In a case involving more than two parties or multiple claims, MAI 2.00 sets forth guidelines for 'packaging' jury instructions, with a separate 'package' of instructions for each 'claim.' *Mathes v Sher Express, L.L.C.*, 200 S.W.3d 97, 105 (Mo. App. 2006). "In most instances, the case should be packaged so that the claim for damages of each party asserting a claim for damages will be covered by a separate package." *Id.* (quoting MAI 2.00(E) [1996 Revision]) (internal quotations omitted). However, a single plaintiff's claim against multiple defendants should generally be contained within a single package. *Id.* For example, "[i]f

9

plaintiff A is making his claim against both defendant X and defendant Y, the verdict directors against both defendants would be included in the package." *Id.*

Here, we find that the court correctly combined FMCC's counterclaim against Steve Oliver Imports and Oliver into a single jury instruction. In FMCC's counterclaim, it alleged four counts of breach of contract. In counts one and three, FMCC alleged that Steve Oliver Imports breached its Wholesale Financing Agreement and Master Loan and Loan Supplement. In counts two and four, FMCC alleged that Oliver breached his Guaranty and Continuing Guaranty. These four counts were combined into a single jury instruction, which read in pertinent part:

> Your verdict must be for Ford Motor Credit Company LLC if you believe:
> First, Stephen A. Oliver and Steve Oliver Imports, LLC did not make payments to Ford Motor Credit Company LLC pursuant to the terms of the Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement, the Master Loan and Security Agreement, the Loan Supplement to Master Loan and Security Agreement, the Continuing Guaranty, the Wholesale Financing Guaranty entered into by and between Stephen A. Oliver and Steve Oliver Imports, LLC and Ford Motor Credit Company LLC on December 4, 2007…

Under this jury instruction, the jury must find that all of the agreements entered into by Steve Oliver Imports and Oliver were breached because both parties failed to make payments on the loans provided by FMCC. This all or nothing instruction correctly reflects an agreement entered into between Steve Oliver Imports, Oliver, and FMCC entitled "CROSS-DEFAULT AND CROSS-COLLATERALIZATION AGREEMENT." This agreement states that Steve Oliver Imports and Oliver are joint and severally liable for all of the agreements, not just ones that each party signed. The agreement further states that if one agreement is in default than all of the other agreements are also in default. Thus, if either party fails to make payments on any of the loans than both Steve Oliver Imports and Oliver are liable for the breach. The above jury instruction correctly reflects this.

10

Oliver further argues that MAI 26.06 instead of MAI 26.02 should have been given because the existence and terms of the contract were in dispute. We disagree. "MAI 26.02 is to be used where the existence and terms of a contract are undisputed and the sole issue is whether defendant breached the contract." *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 393 (Mo. App. 1998) (citing *Porta-Fab Corp. v. Young Sales Corp.*, 943 S.W.2d 686, 689 (Mo. App. 1997). "MAI 26.06 is appropriate where there is a dispute as to 1) what agreement was made, and 2) whether that agreement was breached." *Id.* "Where the terms of a contract are at issue, the appropriate instruction to use is MAI 26.06." *Id.* "The submission of MAI 26.02, when MAI 26.06 is the applicable instruction, constitutes prejudicial error." *Id.*

While we note that Oliver did testify at trial that no contract existed, he also testified that he signed a personal guaranty for the loans. Furthermore, Oliver testified that if his misrepresentation claims failed, he would owe money to FMCC. Thus, after reviewing the record, it suggests that Oliver's statements that no contract existed stemmed from his belief that if there were misrepresentations, then there is no contract. However, "[i]t is the most basic principle of contract law that parties are bound by the terms of the contracts they sign and courts will enforce contracts according to their plain meaning, unless induced by fraud, duress, or undue influence." *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 349 (Mo. banc 2006). Here, Oliver testified that he signed the contracts and had signed similar contracts in the past. Additionally, Oliver's claims that went to the jury were for fraudulent and negligent misrepresentations. Thus, Oliver's claims do not go to the existence or terms of the contract but rather whether the court should *enforce the contract*, making MAI 26.02 the proper instruction. Therefore, the trial court did not err in using MAI 26.02 or in combining FMCC's four-count counterclaim into a single instruction. Point four is denied.

11

## V. Expectancy Damages

In Oliver's fifth point on appeal, he argues that the trial court erred in entering a directed verdict in favor of FMCC on the issue of Oliver's expectancy damages and giving a withdrawal instruction that the jury must disregard such evidence. Oliver contends that a motion for directed verdict is not a proper vehicle for limiting the evidence of Oliver's damages. He further argues that Oliver was not required to elect a remedy prior to submission to the jury because there was substantial evidence that Oliver's reasonable expectations arose from contracts with parties other than FMCC and therefore Oliver's claims for expectation damages were not irreconcilably inconsistent with his fraud remedies of rescinding the contracts with FMCC. We find no err.

When a plaintiff fails to elect between inconsistent damages before submission to the jury, a trial court may properly make the election for plaintiff and direct a verdict against plaintiff on the inconsistent remedy sought. *Trien v. Croasdale Const. Co., Inc.*, 874 S.W.2d 478, 481 (Mo. App. 1994). After the trial court directed a verdict against Oliver on his claim for expectancy damages, the court gave a withdrawal instruction withdrawing the matter from the jury's consideration. The trial court's giving of a withdrawal instruction is reviewed under an abuse of discretion standard. *Arnold v. Ingersoll-Rand Co.*, 908 S.W.2d 757, 764 (Mo. App. 1995).

In finding that the trial court did not err, this Court's holding in *Trien v. Croasdale Const. Co., Inc.* is directly on point. In *Trien*, "the defendant at the close of all the evidence orally moved that plaintiffs be required to elect as between the damages remedy for breach of warranty, and the rescission remedy." 874 S.W.2d at 481. The plaintiffs, however, insisted that they had a right to both remedies. *Id.* The court then directed a verdict for the defendant on the rescission count. *Id.* This Court held that the trial court did not err in doing so. *Id.* We stated, "Upon the

plaintiffs' failure to make an election, the court did the practical thing; it made the election for plaintiffs, and directed a verdict against the plaintiffs on the rescission count." *Id.*

Here, the record reflects that FMCC at the close of all the evidence orally moved for directed verdict as to which remedy Oliver wanted—either to rescind the contract or expectancy damages.[6] Under Missouri law, a party must choose between a legal remedy for money damages and an equitable remedy for rescission of the contract but not both. *Id.* Oliver, like the plaintiffs in the *Trien* case, insisted that he had a right to both remedies. The trial court then sustained FMCC's motion for directed verdict on the expectancy damages.

After directing a verdict for FMCC on the expectancy damages, FMCC then asked the court to use a withdrawal instruction as to the evidence regarding Oliver's expectancy damages as to not confuse the jury. "Withdrawal instructions may be given…when there is evidence presented which might mislead the jury in its consideration of the case as pleaded and submitted…" *Stevens v. Craft*, 956 S.W.2d 351, 355 (Mo. App. 1997). With the expectancy damages no longer for the jury's consideration and using its discretion, the court decided that it would be appropriate to give a withdrawal instruction regarding any evidence relating to the expectancy damages. We find that the court did not abuse its discretion by issuing a withdrawal instruction because such evidence may in fact have mislead the jury in deciding upon the amount of damages under Oliver's fraudulent and negligent misrepresentation claims.

Therefore, in line with our holding in *Trien*, we find that the trial court did not err in entering a directed verdict in favor of FMCC on the issue of Oliver's expectancy damages. We

---

[6] We note that at this point in the trial, the trial court had already sustained a directed verdict for Oliver's tortious interference with business expectancy claim. We concluded in part III of this opinion that the trial court did not err in sustaining a directed verdict for Oliver's tortious interference with business expectancy claim. Thus, the only claims left were for fraudulent and negligent misrepresentation.

13

further find that the court did not abuse its discretion by giving a withdrawal instruction to the jury regarding the evidence of Oliver's expectancy damages. Point five is denied.

## VI. Inquiry into Oliver's Personal Finances

In Oliver's sixth point on appeal, he argues that the trial court erred by overruling his objections to FMCC's introduction of evidence of his hunting experiences, taxidermy hobby, and game farm operation. Oliver contends that such evidence was unduly inflammatory and prejudicial with limited probative value. We find no err.

The extent and scope of cross examination in a civil case is within the discretion of the trial court and "will not be disturbed unless an abuse of discretion is clearly shown." *Nelson v. Waxman*, 9 S.W.3d 601, 604 (Mo. banc 2000) (quoting *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 868-69 (Mo. banc 1993) (internal quotations omitted). "An abuse of discretion occurs when the court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Beaty v. St. Luke's Hosp. of Kan. City*, 298 S.W.3d 554, 558 (Mo. App. 2009).

At trial, Oliver testified, "I was broke and out of business" when he received the "go away" letter from FMCC requiring him to obtain alternate financing. On cross-examination, Oliver clarified that he meant that his business was broke not him. However, Oliver also admitted that he had testified other times at trial that he was broke.

In an effort to show that Oliver was not in fact broke, FMCC offered, and the court admitted into evidence, Oliver's financial statements and loan application made to Chase for alternate dealer financing. Oliver testified about the various assets shown in his 2008 financial statements. Among these assets were hunting trophies and a game farm. Oliver's counsel objected to Oliver being questioned about these assets because it was irrelevant, prejudicial, and

14

inflammatory. FMCC argued that such questioning was proper impeachment because Oliver testified on numerous occasions that he was broke.

During cross examination, FMCC questioned Oliver about what and where he had hunted. To help illustrate this, FMCC used a book that showcased Oliver's vast taxidermy collection.[7] Oliver testified that he had traveled both inside and outside the U.S. hunting animals such as an elephant, leopard, warthog, cape buffalo, and a giraffe. Oliver also testified about his game farm, where people would pay anywhere between $1,500 to $6,500 to hunt various animals like whitetail deer, elk, and antelope.

Oliver argues on appeal that this in-depth testimony into his hunting trophies and game farm was inflammatory and prejudicial compared to its probative value and portrayed Oliver as an unsympathetic person. However, impeachment "provides a tool to test a witness's perception, credibility, and truthfulness, which is essential because a jury is free to believe any, all, or none of a witness's testimony." *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010). Furthermore, the scope of permissible cross-examination is wide. *Sandy Ford Ranch, Inc. v. Dill*, 449 S.W.2d 1, 6 (Mo. 1970).

The record reflects that the court explicitly stated that the questioning was not excessive because

> it is clearly impeaching his observation that he's broke. He tried to wiggle around he was broke and the company was broke. The issue of poverty has been raised and I think in cross-examination you're entitled to impeach him on the issue of poverty. At some point there is a limit as to how far someone should be allowed to go, but I don't think we've gotten to the point yet that it is excessive.

---

[7] The published book is titled "Trophy Rooms from Around the World." Pictures, along with some text, showcase Oliver's hunting trophies.

15

We fail to find that the trial court abused its discretion in allowing this evidence. "The trial court is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs the relevance." *Pittman v. Ripley Cnty. Memor'l Hosp.*, 318 S.W.3d 289, 294 (Mo. App. 2010) (internal quotations and citations omitted). Furthermore, the in-depth questioning regarding Oliver's hunting trophies may have actually helped the jury better understand how Oliver's hunting trophies were a $400,000 asset. A common juror may not be able to see how hunting trophies could be a $400,000 asset to Oliver. Left unquestioned, the jury may have concluded that Oliver inflated the value of his hunting trophies on his loan application with Chase in an attempt to obtain financing. Thus, the trial court did not err by overruling Oliver's objections regarding his hunting trophies and game farm. Point six is denied.

### VII.    Oliver's Hospitalization

In his final point on appeal, Oliver argues that the trial court erred in denying his request that the jury be advised that he was hospitalized with a serious ailment during the course of the trial. Oliver further contends that the court had a duty to tell the jury the truth and to not allow his ailment to prevent him from receiving a fair trial. We find no err.

This Court's review of whether the trial court erred in not allowing Oliver to testify that his absence was due to hospitalization is limited to an abuse of discretion. *Aliff v. Cody*, 26 S.W.3d 309, 314-15 (Mo. App. 2000).

On April 19th, the trial court informed the jury that Oliver was having some stomach distress and had given him permission to get up and run out of the courtroom if needed. The following day Oliver was absent from the court proceedings. Before beginning for the day, the court informed the jury that

16

Mr. Oliver can't be with us today[. H]e has to address medical issues today that were mentioned briefly yesterday when I announced we may be taking immediate breaks without much of any kind of notice. I don't want to go into greater detail than that, so he won't be with us.

After missing three days at trial, Oliver returned on April 25th. Oliver's counsel wanted to recall Oliver to the witness stand to tell the jury that the reason he had been absent was because he had been hospitalized. However, the court did not allow Oliver to testify that he was hospitalized.

In reaching its decision, the court told the attorneys at the bench:

Obviously the line I'm trying to walk here is to offer the plaintiff some modest explanation of the jury how come he didn't bother to attend, so it doesn't appear to be disrespectful or unimportant. On the other hand, I'm fearful of engendering sympathy, so I've carefully chosen the way I put it in the first place. He's attending to his medical needs. I'm ruling that is sufficient and you may not go any further.

We fail to see how the court abused its discretion in not allowing Oliver to testify that he was absent because he was hospitalized. The court informed the jury on Oliver's first day of absence that he was gone because he was addressing medical issues. Upon Oliver's return, the court, using its discretion, decided that any testimony regarding Oliver's hospitalization would not be allowed. The court feared that such testimony might elicit sympathy for Oliver.

Nevertheless, Oliver contends that he should have been able to explain to the jury why he was gone and that his illness was the reason for his changed demeanor. As previously mentioned, the court told the jury that on April 19th that Oliver had some stomach distress and would be able to get up and leave when necessary. The next day the court explained to the jury that he was addressing to his medical issues that was mentioned the day before. Furthermore, while Oliver argues that his changed demeanor upon return had a negative impact on his credibility, his changed demeanor could have had a positive impact on his credibility because it

17

showed the jury that Oliver did, in fact, need to attend to his medical issues as the court instructed a few days earlier. Therefore, we find that the court did not abuse its discretion by not allowing Oliver to be recalled to testify that he was hospitalized because the court previously explained to the jury that Oliver was absent in order to address his medical issues. Thus, we find no err. Point seven is denied.

## VIII.   Cross Appeal

In FMCC's single point on cross appeal, it argues that the trial court erred in denying its motion to alter or amend the judgment for entry of attorneys' fees, costs and expenses, and interest. FMCC contends that the court must award them for three reasons: 1) It prevailed on its counterclaims for breach of contract; 2) It properly plead and proved that the contract terms required Oliver to pay for attorneys' fees, costs and expenses, and interest; and 3) the amounts were reasonable. We find no err.

The denial of a request for attorneys' fees is reviewed for an abuse of discretion. *Green v. Plaza in Clayton Condo. Ass'n*, 410 S.W.3d 272, 281 (Mo. App. 2013). "A court abuses its discretion when its action is so clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Kopp v. Home Furnishing Ctr., LLC*, 210 S.W.3d 319, 329 (Mo. App. 2006). In reviewing a denial of attorneys' fees, this Court reviews the evidence with great deference toward the trial court. *Id.* "'The party requesting an award of attorney's fees has the burden of proving entitlement to such award.'" *Potts v. Potts*, 303 S.W.3d 177, 196 (Mo. App. 2010) (quoting *Andrews v Andrews*, 290 S.W.3d 783, 787 (Mo. App. 2009)).

While FMCC did plead for attorneys' fees and prevailed on its breach of contract counterclaim, FMCC failed to present any evidence at trial of its attorneys' fees and costs and

18

expenses. Furthermore, FMCC failed to argue that the contracts entered into with Oliver entitled FMCC to attorneys' fees. Therefore, even though FMCC requested attorneys' fees in its counterclaim, it failed to meets its burden by proving it was entitled to such award. Likewise, FMCC failed to present any evidence as to the interest it was entitled to per the contract terms and therefore failed to meets its burden regarding any interest. Thus, we find that the court did not err in denying FMCC's motion to alter or amend the judgment for entry of attorneys' fees, costs and expenses, and interest. FMCC's cross-appeal is denied.

**Conclusion**

We conclude, therefore, that the circuit court did not err in (1) granting FMCC's motion for directed verdict on Oliver's fraud by silence claim because under the facts of this case and following *Hess*, Oliver's fraudulent misrepresentation and fraud by silence claims are not separate torts; (2) rejecting Oliver's proposed verdict directors and refusing to submit any instruction on his fraudulent and negligent misrepresentation by silence claims because it would have been inappropriate to give verdict directors after properly granting directed verdicts on those claims; (3) granting FMCC's motion for directed verdict on Oliver's tortious interference with business expectancy claim because he failed to bring the claim against a third party; (4) overruling his objections and submitting FMCC's breach of contract counterclaims in a single MAI 26.02 verdict director because the parties had an agreement that if any of the agreements were in breach than all of the agreements were in breach and the terms of the contract were not in dispute; (5) entering a directed verdict on the issue of Oliver's expectancy damages and giving a withdrawal instruction because Oliver failed to elect between inconsistent damages and any evidence regarding such expectancy damages may have mislead the jury in deciding the amount of damages; (6) overruling Oliver's objections to FMCC's introduction of evidence regarding his

19

hunting experiences, taxidermy hobby, and game farm operation because such evidence went to impeach Oliver's claim that he was broke; and (7) denying Oliver's request that the jury be advised that he was hospitalized during a part of the trial because the court previously explained to the jury that Oliver was absent in order to address his medical issues and his testimony on the matter may have elicited sympathy for Oliver. We further conclude that the circuit court did not err in denying FMCC's motion to alter or amend the judgment for entry of attorneys' fees, costs and expenses, and interest because FMCC failed to argue and present evidence that FMCC was entitled to such an award under the terms of its contract with Oliver. We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

All concur.