

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF RALPH BOOKER A/K/A RALPH F. BOOKER, A/K/A RALPH FREEMAN BOOKER, JR., | WD77460 |
| **Appellant,** | OPINION FILED: MARCH 31, 2015 |
| v. | |
| STATE OF MISSOURI, | |
| **Respondent.** | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Kathleen Forsyth, Judge**

**Before Division Two: Anthony Rex Gabbert, PJ., Joseph M. Ellis, Karen King Mitchell, JJ.**

Ralph Freeman Booker, Jr. appeals the circuit court's judgment finding him to be a sexually violent predator and ordering him to be placed in a secure facility in custody of the Department of Mental Health. In his only point on appeal, Booker asserts that the court plainly erred in allowing the State to impeach his expert witness using statements Booker made during his trial testimony that were restricted by the State's motion in limine regarding collateral estoppel. Booker further argues that the use of these statements violated his right to due process. We affirm.

**Factual Background**

Booker was scheduled to be released from the Farmington Correctional Facility on March 12, 2010 after serving a fifteen year sentence for the forcible rape of a sixteen year-old girl.  On March 4, 2010, the State filed a petition to have Booker civilly committed as a sexually violent predator.  Prior to his arrest for forcible rape, Booker had served a five year sentence for attempted rape and sodomy of a thirteen year-old girl.  He was also found guilty of indecent exposure in 1988.  Both the rape and attempted rape qualify as sexually violent offenses under § 632.480, RSMo 2000[1].

Prior to the trial, the State filed a motion in limine to bar Booker from presenting evidence or arguing that he was innocent of any crime to which he had previously pled guilty.  The court granted the motion.

During the trial on July 23, 2013, the State called Dr. Steven Mandracchia as a witness.  Dr. Mandracchia is a psychologist for the Missouri Department of Mental Health.  Dr. Mandracchia testified that in his opinion Booker met the criteria of a sexually violent predator since he diagnosed Booker with the sexual abnormality of paraphilia, not otherwise specified.  This diagnosis resulted from Booker's sexual offenses against non-consenting parties and a 2010 interview that Dr. Mandracchia had with Booker.  However, in 1995, the Department of Health conducted an interview with Booker where they determined that the reason for Booker's crimes was not a mental defect.  Dr. Mandracchia claimed he used two different tests to determine Booker's likelihood to commit another sexually violent act, one labeled the Static 99R and

---

[1] All statutory references are to the Missouri Revised Statutes 2000 updated by the most recent cumulative supplement, unless otherwise noted.

another labeled the Static 2002R. Both resulted in diagnosing Booker with a high probability of committing a sexually violent offense within ten years.

After Dr. Mandracchia's testimony, Booker testified. He testified about his childhood and the crimes which he pled guilty to. Booker also testified that he had been addicted to PCP when he committed the sexually violent acts and was, in fact, high on PCP when he committed the forcible rape. Booker had been given two chances to participate in the Missouri Sex Offender Treatment Program (MOSOP) and was discharged once in 1993 and again in 2006. The MOSOP is offered to those who have committed sexual offenses and gives them a chance for early release. Booker also testified about the facts surrounding his dismissal from the MOSOP program where he claimed to have been harassed by white supremacists in the group.

Booker then called his own doctor as a witness, Dr. Robert W. Barnett. Dr. Barnett works in Kansas and had never dealt with a Missouri sexually violent predator. Dr. Barnett admitted that he had not read the Missouri Sexually Violent Predator Act but that he had read an article with information about the act and that he understood it to be very similar to Kansas's statute. On cross-examination, the State pointed out that Dr. Barnett is a 'hired gun' and that Dr. Mandracchia is independent of either party in that he was not being compensated by the State or Booker. Dr. Barnett claimed that Booker has a low risk of recidivism for crimes of a sexual nature unless he becomes addicted to intoxicants again, in which case "all bets are off." Dr. Barnett based his opinion on an interview that he conducted with Booker as well as the investigative report of the rape, witness statements, and review of Dr. Mandracchia's sexually violent predator evaluation. On cross examination, Dr. Barnett testified that he was unaware that Booker had testified the day before that he had committed the past sexual crimes. Booker objected, arguing that the State's questioning of Dr. Barnett used testimony from an already

3

litigated matter in violation of the State's motion in limine. The court overruled the objection. After the conclusion of the evidence, the court found Booker to be a sexually violent predator and ordered him to be placed in the custody of the Missouri Department of Mental Health. Booker appeals.

## Admission of Trial Testimony

In his sole point on appeal, Booker argues that the trial court plainly erred in allowing the State to impeach Dr. Barnett using Booker's current testimony which was restricted by the State's motion in limine. He claims that the use of Booker's own testimony to impeach Dr. Barnett denied Booker of his right to due process of law and resulted in manifest injustice. We find no error.

Booker concedes that the issue was not preserved for appeal. Therefore, this Court's review is limited to plain error review. Rule 30.20 states in part that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "In reviewing a claim under the plain-error standard, this Court first asks 'whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious, and clear, which resulted in manifest injustice or a miscarriage of justice.'" *Wagner v. Mortgage Info. Servs., Inc.,* 261 S.W.3d 625, 632 (Mo. App. 2008) (quoting *Cohen v. Express Fin. Servs., Inc.,* 145 S.W.3d 857, 864 (Mo. App. 2004)). "If in applying this standard the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps." *Id.* "First, the court must determine whether the trial court actually committed evident, obvious, and clear error that affected substantial rights." *Id.* "In the second step . . . the court must determine whether the evident, obvious, and clear error found resulted in manifest injustice or a miscarriage

of justice." *Id.* at 632-33. We conclude that Booker's claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice.

In allowing the State to impeach Dr. Barnett the trial court did not commit an error so obvious as to affect Booker's substantial rights. Section 491.070 states: "A party to a cause, civil or criminal, against whom a witness has been called and given some evidence, shall be entitled to cross-examine said witness . . . on the entire case." The scope of cross-examination is within the trial judge's discretion and will only be disturbed for clear abuse. *Oliver v. Ford Motor Credit Co., LLC*, 437 S.W.3d 352, 364 (Mo. App. 2014). In *Oliver,* this Court found that the trial court did not abuse its discretion in allowing evidence of defendant's hobbies, hunting trophies, and game farm to establish the breadth of his finances in rebuttal of defendant's claim that he was "broke." *Id.* at 364-65. Additionally, a witness may be asked any question that goes to that witness's accuracy, veracity, or credibility. *State v. Clark*, 364 S.W.3d 540, 544 (Mo. banc 2012). One of the few limitations to judicial discretion is that the cross-examination cannot encompass irrelevant matters. *Id.*

When the State asked Dr. Barnett if he was aware that Booker had admitted the day before to the charges of rape and sodomy, it did so in order to cast doubt upon Dr. Barnett's credibility and veracity. This is consistent with the questions asked leading up to what is at issue here concerning Dr. Barnett's pay and qualifications to speak on this matter in the state of Missouri. Dr. Barnett testified that the rape victim had claimed rape because she had not been given "all the jewelry" after having sex with Booker, not because the encounter had been entirely non-consensual from the beginning. The State then attacked Dr. Barnett's testimony with Booker's testimony, made the day before, admitting that he had committed the rape. Bringing up Booker's

5

prior testimony was relevant to establishing that Dr. Barnett's diagnosis was based on facts directly refuted by Booker and, therefore, lacked credibility.

"A party who opens a subject is held either to be estopped from objecting to its further development or to have waived the right to object to further development." *Croxton v. State,* 293 S.W.3d 39, 43 (Mo. App. 2009). In bringing up the circumstances surrounding Booker's rape charge Dr. Barnett opened up the subject. Booker cannot complain of manifest injustice because the State chose to develop the circumstances further in order to bring Dr. Barnett's testimony in line with Booker's testimony. In allowing the State to bring up Booker's testimony to attack Dr. Barnett's credibility the trial court did not facially abuse its discretion, therefore no further analyses is required regarding manifest injustice. We find no error and point one is denied.

We conclude, therefore, that the trial court did not plainly error in allowing the State to impeach Dr. Barnett with testimony that Booker gave during the trial testimony. We affirm the circuit court's judgment.


_____
Anthony Rex Gabbert, Judge


All concur.

6