

# SUPREME COURT OF MISSOURI
## en banc

IN THE MATTER OF THE CARE   )
AND TREATMENT OF D.N.    )

*Opinion issued April 14, 2020*

No. SC98077

**APPEAL FROM THE CIRCUIT COURT OF CLARK COUNTY**
**The Honorable Rick R. Roberts, Judge**

In 2005, appellant D.N. ("Offender") pleaded guilty to felony sex abuse and was sentenced to 15 years' imprisonment. Before Offender's release in August 2016, the State filed a petition seeking to civilly commit Offender to the department of mental health ("DMH") as a sexually violent predator ("SVP"), as defined by section 632.480.[1] A jury found Offender to be an SVP, and the circuit court entered judgment committing him to DMH. Offender raises seven points on appeal. This Court affirms.

## I. Factual and Procedural History

Offender was convicted in 2005 of felony sex abuse of his mentally disabled sister-in-law, and the circuit court imposed a 15-year sentence. Near the end of his sentence, Dr. Angela Webb, a state psychologist with the department of corrections, evaluated Offender as required by section 632.480 and determined he met the definition of a

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

"sexually violent predator." The State filed a petition seeking civil commitment under the Sexually Violent Predator Act ("the Act") alleging probable cause to establish SVP status. As support for the allegations, the State attached affidavits, including the end-of-confinement report authored by Dr. Webb, an SVP assessment form, and the prosecutor's review committee vote. A hearing took place pursuant to section 632.489 during which the circuit court found probable cause to support the allegations in the petition. The court transferred Offender to DMH for further evaluation of whether he met the criteria for an SVP. The court set the matter for trial pursuant to section 632.492.

During trial, the jury heard evidence that Offender's first known incident of sexually deviant behavior took place in 1989, when he pleaded guilty to indecent contact with his 8-year-old son. In 1992, Offender pleaded guilty to sodomy after engaging in sexual conduct with a sleeping 18-year-old woman. For this offense, he was sentenced to five years' imprisonment, and he completed the Missouri Sex Offender Treatment Program ("MOSOP"). In 1997, two new allegations of sexual misconduct arose against Offender, but he was not arrested or charged as a result of either allegation. One involved sexual conduct with his mentally disabled sister-in-law. The other involved Offender staring at teenage girls in their bathing suits. Between 1997 and 2000, Offender's stepson reported three incidents of molestation while he was 4 to 7 years old, but Offender was never criminally charged for these alleged acts. In 2005, Offender pleaded guilty to sexual abuse against his mentally disabled sister-in-law after he was observed in her bedroom engaging in sexual conduct with her. For this offense, he received a sentence of 15 years' imprisonment. While serving this sentence, Offender completed MOSOP a second time.

Dr. Harry Goldberg, a forensic clinical psychologist, testified at trial for the State that Offender met the statutory criteria for an SVP. He testified he evaluated Offender and determined Offender had a mental abnormality as defined by the Act and the abnormality made Offender more likely than not to engage in sexually violent behavior. Dr. Goldberg testified that, in conducting his evaluation, he reviewed multiple documents and records related to Offender looking for a "pattern of behavior" that caused "distress or dysfunction." Dr. Goldberg diagnosed Offender with three disorders: 1) pedophilic disorder, sexually attracted to males, nonexclusive type; 2) other specified paraphilic disorder, nonconsensual sex; and 3) other specified personality disorder, antisocial personality. Dr. Goldberg further testified that, while these disorders individually do not constitute mental abnormalities for purposes of the Act, the three disorders in concert constitute a mental abnormality. Dr. Goldberg then opined Offender's mental abnormality made him more likely than not to engage in acts of predatory sexual violence if not confined in a secure facility, finding elevated risk through several actuarial scales and risk assessments.

Dr. Jeffrey Kline, a DMH psychologist, examined Offender and found Offender was not an SVP. Dr. Kline testified at trial that Offender did not suffer from a mental abnormality as defined by the Act and, therefore, did not meet the criteria of an SVP. Like Dr. Goldberg, Dr. Kline reviewed thousands of pages of records and interviewed Offender. Dr. Kline did not diagnose Offender with pedophilic disorder or paraphilic disorder involving non-consent. Dr. Kline explained he could not diagnose Offender with these

3

disorders because of a lack of evidence showing the patterns of behavior typical of these disorders.

Offender testified at trial about the MOSOP treatment he received and his renewed commitment to abide by the law. He testified about his past sexual offenses and his risk for reoffending. When asked if he would commit sexual offenses again, he answered, "If I said no, then it would [be] a lie. If I say yes, there's a possibility, then I would be right."

The jury unanimously found by clear and convincing evidence that Offender met the criteria for an SVP, and the circuit court entered an order committing him to DMH for control, care, and treatment. The circuit court denied Offender's motion for a new trial. This appeal follows.[2]

## II. Discussion

Offender raises seven points of error on appeal, summarized here: (1) the circuit court abused its discretion when it prohibited Offender from questioning the jury panel about the specific ages of child victims; (2) the circuit court erred when it excluded a portion of the testimony of Dr. Kline; (3) the circuit court plainly erred in submitting Instruction No. 6, the verdict director, because it deprived Offender of his right to a unanimous jury verdict; (4) Offender received ineffective assistance of counsel at the probable cause hearing because counsel did not object to the end-of-confinement report authored by Dr. Webb, a provisionally licensed psychologist; (5) the circuit court plainly erred in overruling the motion for new trial based on juror nondisclosure of bias; (6) the

---

[2] Other relevant facts will be discussed as necessary in the appropriate sections of this opinion.

4

circuit court clearly erred in overruling the motion for new trial based on ineffective assistance of trial counsel for failure to move for change of venue; and (7) omissions in the trial transcript constitute structural error that deprive Offender of meaningful appellate review. These points will be addressed in order.

**Point I: Jury Selection and Critical Facts**

Offender claims the circuit court abused its discretion when it prohibited Offender from disclosing the specific ages of two child victims during jury selection, claiming that the specific ages were critical facts of the case and had a substantial potential for revealing disqualifying bias.

*Facts Relevant to Point I*

In a pretrial motion in limine, the State asked the circuit court to prohibit Offender from inquiring and discussing in explicit detail the nature of his offenses during jury selection, including the ages of the child victims. The circuit court initially overruled the State's motion. During jury selection, the State's attorney informed the prospective jurors, "I expect that you'll hear that the disorders we're going to be talking about include … an attraction to children, … and I'll expect you'll hear that [Offender] has victimized several people in his history." Three prospective jurors stated they could not be fair to Offender because of these allegations, including two who cited personal experiences involving child victims. Offender's counsel also questioned prospective jurors and stated, "[Y]ou're likely to hear evidence that [Offender] has a victim that is 10 years old and an alleged victim that was 10 years old at the time of the offense." The State objected based on the pretrial motion in limine, and the circuit court sustained the objection. Complying with the court's ruling,

Offender's counsel then asked the prospective jurors if they had young children and remarked about the natural urge to protect them. Offender's counsel asked:

> Is there anybody … that is worried that because of having kids or grandkids that are small that that's going to be in the back of your mind when you're looking at the evidence and … if you don't feel that the State has met their burden, that because of the fact that you have kids, that you're going to vote to – that he meets the criteria because you'd rather be safe than sorry because of those close to you?

Two prospective jurors responded affirmatively. Offender's counsel confirmed with the two prospective jurors that they had "young" or "younger" kids.

After jury selection, Offender's counsel stated, as an offer of proof, that he "would have asked questions regarding the victims, namely that there are two male victims that were ages, 10, both of them." This claim of error was included in Offender's motion for a new trial.

*Standard of Review*

The circuit court "is vested with the discretion to judge the appropriateness of specific questions" during jury selection. *State v. Oates*, 12 S.W.3d 307, 310 (Mo. banc 2000). "[T]he nature and extent of the questions counsel may ask are discretionary with that court." *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998) (quoting *State v. Smith*, 649 S.W.2d 417, 428 (Mo. banc 1983)). "Likewise, the trial judge is in the best position 'to judge whether a disclosure of facts on *voir dire* sufficiently assures the defendant of an impartial jury without at the same time amounting to a prejudicial presentation of the evidence.'" *Id.* (quoting *State v. Leisure*, 749 S.W.2d 366, 373 (Mo. banc 1988)). "The discretion of the trial judge in striking this difficult balance will be upheld, absent abuse."

6

*State v. Antwine*, 743 S.W.2d 51, 59 (Mo. banc 1987). "Where reasonable persons can differ about the propriety of the action taken by the trial court, no abuse of discretion will be found." *State v. Johnson*, 207 S.W.3d 24, 40 (Mo. banc 2006). "An appellate court will find reversible error only where an abuse of discretion is found and the defendant can demonstrate prejudice." *Oates*, 12 S.W.3d at 311.

*Analysis*

"The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury." *Clark*, 981 S.W.2d at 146. Discovery of bias in potential jurors sometimes requires the revelation of some facts of the case. *Leisure*, 749 S.W.2d at 373. However, "counsel is not permitted to try the case on *voir dire* by a presentation of facts in explicit detail." *Id*. "Every fact need not be disclosed to prospective jurors." *Clark*, 981 S.W.2d at 147. While trial lawyers naturally seek to influence and persuade jurors at every stage of a trial, counsel may not advocate during jury selection or seek to predispose jurors to react a certain way to anticipated evidence. *Id*. at 146-47. The goal of jury selection is to assemble and convene fair and impartial jurors, not to advocate, influence, and persuade. For this reason, "argument or a presentation of the facts in explicit detail during voir dire is inappropriate." *Id*. at 146 (internal quotations omitted). "Only those critical facts – facts with substantial potential for disqualifying bias – must be divulged to the venire." *Id*. at 147.

This Court has held "[a] case involving a child victim can implicate personal bias and disqualify prospective jurors." *Id*. In *Clark*, one of the defendant's murder victims was a 3-year-old girl, and this Court found the circuit court improperly limited the scope

7

of jury selection because defense counsel was "completely precluded" from revealing that the case involved a child victim. *Id.* "Due to the sweeping nature of the trial court ruling …, the defense could not attempt to discover [the related] bias." *Id.* The precise details of a critical fact, however, are not necessarily critical facts themselves. In *State v. Baumruk*, 280 S.W.3d 600, 614 (Mo. banc 2009), the circuit court prohibited defense counsel from divulging during jury selection that the defendant had attempted to kill eight people in addition to his wife, but counsel was allowed to state more generally that the defendant shot at "other people." The critical fact in *Baumruk* was that the defendant attempted to kill multiple persons or "other people," not the precise number of individuals.

In Offender's case, the jury would hear evidence that some of Offender's victims were children, making personal bias by certain prospective jurors a real possibility. This Court recognized the importance of allowing a party to explore this risk for bias in *Clark*. In this case, however, the circuit court did not preclude disclosure of this critical fact to the jury panel. Unlike in *Clark*, the circuit court here allowed counsel to alert the jury panel that Offender's prior conduct included offenses against children. Counsel for both the State and Offender disclosed this fact to the panel. The State's attorney said that Offender's alleged disorders included "an attraction to children … and … that he has victimized several people in his history." In response to this line of inquiry from the State, two prospective jurors cited personal experiences involving child victims among their concerns that they could not be fair to Offender. Offender's counsel later told the jury panel, "[Y]ou're likely to hear evidence that [Offender] has a victim that is 10 years old and an alleged victim that was 10 years old at the time of the offense." The State's attorney then

8

objected and the circuit court sustained the objection, but the jury panel was alerted that the victims were children when Offender's counsel followed up by asking the panel if any members have children who are "young kids." The circuit court restricted Offender's counsel from inquiring only as to the exact age of the victims and did not limit inquiries regarding the youth of the victims. In fact, Offender's counsel repeatedly referred to "young," "younger," and "small" "kids" while inquiring as to whether potential jurors would hold a bias against Offender. Several prospective jurors indicated they would struggle to be fair and impartial due to their personal relationships with children. Offender had sufficient opportunity to explore any potential bias within the jury panel because of the tender age of his victims, as required by *Clark*. The circuit court's reasonable restriction on precise, detailed inquiry regarding the age of the victims was not an abuse of discretion.

**Point II: Exclusion of Expert Testimony**

Offender claims the circuit court erred in excluding Dr. Kline's assessment of his future risk of reoffending because it prevented him from rebutting the State's case on an essential element of the Act.

*Facts Relevant to Point II*

In a pretrial motion in limine, the State asked the circuit court to prohibit Dr. Kline from testifying about Offender's risk of future dangerousness because Dr. Kline did not find Offender suffered a mental abnormality and testimony regarding future risk is, therefore, irrelevant and could not assist the jury. The circuit court sustained the motion. During direct examination, Offender's counsel informed the court he intended to examine Dr. Kline about the unreliability of the risk assessments and actuarial tools Dr. Goldberg

9

used to assess Offender's risk. The circuit court allowed Offender's counsel to examine Dr. Kline about those issues to rebut the reliability of Dr. Goldberg's testimony. In an offer of proof made outside the presence of the jury, Dr. Kline also testified he used certain risk assessment tools to come to a psychological opinion as to Offender's risk of reoffending. He testified he found the same above-average risk category as Dr. Goldberg, but he did not conclude Offender met the statutory criteria for commitment as an SVP because he found no mental abnormality. Over Offender's objection, the circuit court prohibited the jury from hearing Dr. Kline's testimony contained in the offer of proof. Offender did not include this claim of error in his motion for new trial.

*Standard of Review*

Admission of evidence is typically reviewed for abuse of discretion. *See In re Care & Treatment of Murrell*, 215 S.W.3d 96, 109 (Mo. banc 2007). Because Offender did not raise this claim of error in his motion for new trial, it is unpreserved for appellate review. This Court may, in its discretion, consider "[p]lain errors affecting substantial rights," though not raised or preserved, "when the court finds that the manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c); *see also Booker v. State*, 457 S.W.3d 349, 352 (Mo. App. 2015). This Court has no obligation, however, to conduct an appellate review if the appellant did not properly preserve the issue and fails to facially establish grounds demonstrating manifest injustice. *Nelson v. State*, 521 S.W.3d 229, 235 (Mo. banc 2017).

10

*Analysis*

To commit an offender to DMH for control, care, and treatment, "Missouri's SVP statute requires a finding that … the individual 1) has a history of past sexually violent behavior; 2) a mental abnormality; and 3) the abnormality creates a danger to others if the person is not incapacitated." *Murrell*, 215 S.W.3d at 105; *see also* § 632.480(5), RSMo Supp. 2017. "[D]ue process requires that the 'mental abnormality' and 'dangerousness' be inextricably intertwined, such that 'involuntary civil confinement [is limited] to those who suffer from a volitional impairment rendering them dangerous beyond their control.'" *Murrell*, 215 S.W.3d at 104 (alterations in original) (quoting *Kansas v. Hendricks,* 521 U.S. 346, 358 (1997)). To ensure constitutional validity, the Act requires a finding of future dangerousness linked to the existence of a "mental abnormality" that causes the individual serious difficulty controlling his behavior. *Id.* (citing *Thomas v. State*, 74 S.W.3d 789, 791-92 (Mo. banc 2002)). Therefore, an individual's likelihood of engaging in predatory acts of sexual violence is relevant to an SVP inquiry only if that risk is caused by a mental abnormality. *See id.* In its pretrial motion in limine, the State argued Dr. Kline's proffered testimony regarding his opinion of Offender's risk level was not relevant because Dr. Kline did not conclude Offender suffered from a mental abnormality under the Act. The circuit court agreed and excluded Dr. Kline's testimony on this topic.

In contrast, Offender claims the circuit court's ruling denied his due process rights to a fair trial in that Dr. Kline's opinion was key to Offender's defense to an essential element of the State's case and rebutted the State's evidence that his mental abnormality made him a danger to others. Offender claims this error requires this Court to reverse the

11

circuit court's judgment and grant a new trial. But, even if Offender's position is correct and Dr. Kline's testimony was admissible, he failed to properly preserve this claim and does not allege or establish manifest injustice as required by Rule 84.13(c). While Offender claims he was prejudiced by the circuit court's ruling, mere prejudice is insufficient to justify plain error review; Offender must have suffered manifest injustice as a result of the circuit court's ruling. Because Offender failed to preserve this issue for appellate review, this Court need not review Offender's claim of error. *Nelson*, 521 S.W.3d at 235.

Even if Offender had satisfactorily alleged manifest injustice and this Court exercised its discretion to review this claim, Offender would not be entitled to relief. The excluded testimony in the offer of proof pertained only to Dr. Kline's assessment of risk in the absence of any diagnosed mental abnormality. Despite the circuit court's exclusion of this testimony, Dr. Kline was allowed to testify that he did not diagnose Offender with a mental abnormality and opine about the unreliability of the risk assessment tools used by the State's expert. Moreover, in his offer of proof, Dr. Kline testified he found the same elevated risk category as Dr. Goldberg's assessment. Dr. Kline explained, however, because he found no mental abnormality, this elevated risk could not meet the statutory and constitutional requirements for SVP commitment. This proffered testimony only repeated and confirmed Dr. Goldberg's conclusion as to Offender's elevated risk level and repeated Dr. Kline's previously admitted opinion that Offender did not suffer from a mental abnormality. Dr. Kline's excluded testimony was cumulative, therefore, and did not rebut the State's evidence nor offer support of a defense to an essential element of the State's

case. Because the jury heard Dr. Kline testify about these topics and the excluded testimony would not have assisted his defense, Offender would not have been entitled to relief had this claim been properly preserved and presented.

**Point III: Juror Unanimity**

Offender claims his right to a unanimous verdict was violated because Instruction No. 6 did not require the jury to identify the specific mental abnormality attributed to him.

*Facts Relevant to Point III*

During the trial, the State presented evidence that Offender suffered from three separate disorders: 1) pedophilic disorder, sexually attracted to males, nonexclusive type; 2) other specified paraphilic disorder, nonconsensual sex; and 3) other specified personality disorder, antisocial personality. Dr. Goldberg further testified that, while these disorders individually do not constitute mental abnormalities, the three disorders in concert constitute a mental abnormality under the Act. Instruction No. 6, the verdict director, required a finding by the jury that Offender "suffers from a mental abnormality" and "that his mental abnormality makes [him] more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility." The instruction also defined "mental abnormality" consistent with section 632.480(2) and *In re Care & Treatment of Thomas*, 74 S.W.3d 789, 791 (Mo. banc 2002).[3] Instruction No. 4 stated the verdict "must be agreed to by each juror. The verdict must be unanimous and must be signed by each juror." Each

---

[3] The instruction reads: "As used in this instruction, 'mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior."

13

juror signed the verdict form and affirmed his or her agreement when polled by the circuit court after receiving the verdict form from the jury. While Offender submitted proposed instructions and raised the issue of their denial in his motion for new trial, he did not object to Instruction No. 6 on the grounds presented on appeal, and the claim of error is not preserved.[4]

*Standard of Review*

This point is unpreserved for appellate review. If considered by this Court at its discretion, an unpreserved claim of error can only be reviewed for plain error. Rule 84.13(c). This Court has stated, in the context of a criminal case, that "[t]he plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been preserved for appellate review." *State v. Valentine*, 646 S.W.2d 729, 731 (Mo. banc 1983). Although this is a civil matter, this Court may, in its discretion, consider "[p]lain errors affecting substantial rights," though not raised or preserved, "when the court finds that the manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c); *see also Booker*, 457 S.W.3d at 352. Because further guidance on the issue of juror unanimity may be helpful for legal practitioners, the Court will exercise its discretion and review Offender's jury instruction claim for plain error.

*Analysis*

Section 632.495.1 requires a jury to "determine whether … the person is a sexually violent predator" by unanimous verdict. Section 632.480(5) defines "sexually violent

---

[4] In his opening brief, Offender acknowledges this claim of error was not preserved for appellate review and requests plain error review.

predator" as a "person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility …. " "For a jury verdict to be unanimous, 'the jurors must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt.'" *Celis-Garcia*, 344 S.W.3d at 155 (quoting 23A C.J.S. *Criminal Law* § 1881 (2006)). *Celis-Garcia* does not require unanimity among the jury members as to the precise means by which an essential element of an offense is established. The jury needs to be unanimous only as to the ultimate issue. *State v. Richter*, 504 S.W.3d 205, 211 (Mo. App. 2016) (citing *State v. Fitzpatrick*, 193 S.W.3d 280, 292 (Mo. App. 2006)).

To illustrate juror unanimity on the ultimate issue, the United States Supreme Court in *Richardson v. United States*, 526 U.S. 813 (1999), used the example of the offense of robbery. The Court stated, "Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement – a disagreement about means – would not matter as long as all 12 jurors unanimously concluded that the Government had proved … that the defendant had threatened force." *Id.* at 817. Agreement as to the essential element, even if there could be disagreement about the means of satisfying the element, fulfills the unanimity requirement.

In this case, Instruction No. 6 required the jury to find that Offender "suffers from a mental abnormality" and that the mental abnormality makes him more likely than not to engage in sexually predatory acts. The instruction further defined "mental abnormality" consistent with the Act, which does not require the Offender to suffer from a specific

15

mental abnormality. Section 632.480(2) requires a jury to find only the existence of a mental abnormality that increases Offender's likelihood of committing predatory acts of sexual violence, not unanimity on the precise nature of the abnormality. Instruction No. 6 did not create a risk that jurors would disagree as to an ultimate issue or element.

Furthermore, while Dr. Goldberg testified he diagnosed Offender with three disorders, he also said those three disorders individually do not constitute mental abnormalities that satisfy the Act. Instead, he testified they work in combination to constitute one singular mental abnormality. There is no possibility of a non-unanimous verdict in this case because the State did not present evidence of multiple mental abnormalities. *Cf. Celis-Garcia*, 344 S.W.3d at 155-56 ("A multiple acts case arises when there is evidence of multiple, distinct … acts, each of which could serve as the basis for a … charge, but the defendant is charged with those acts in a single count."). The circuit court did not plainly err in submitting Instruction No. 6, therefore, because it did not violate Offender's statutory right to a unanimous verdict.

**Point IV: Ineffective Assistance at Probable Cause Hearing**

Offender claims he received ineffective assistance of counsel at his probable cause hearing because counsel failed to object to the credentials of the end-of-confinement report author.

*Facts Relevant to Point IV*

The day before trial, Offender filed a motion to dismiss the petition "or in the alternative order[] a new end-of-confinement [report] be prepared by a qualified examiner." The motion alleged the author of the end-of-confinement report, Dr. Angela

16

Webb, was not eligible under the Act to make the necessary determination as to whether Offender was a sexually violent predator because she "is not a licensed psychologist within the meaning of [c]hapter 337 of RSMo." Offender's motion acknowledged Dr. Webb was provisionally licensed as a psychologist by the state of Missouri, but the motion alleged she had "failed her licensing exam [on] three occasions" since the probable cause hearing.

During the pretrial hearing on this motion, Offender's counsel again conceded Dr. Webb was provisionally licensed at the time of the probable cause hearing and, as of the date of the pretrial hearing, continued to be provisionally licensed.

The circuit court overruled Offender's motion to dismiss. At trial, Offender's counsel renewed the motion for remand for a probable cause determination, which the circuit court overruled. Offender's motion for new trial incorporated the arguments made in the motion to dismiss by reference, and the circuit court similarly overruled the motion for new trial.

*Standard of Review*

This Court recently recognized the right to effective assistance of counsel in SVP proceedings. *In re Care & Treatment of Grado*, 559 S.W.3d 888, 895-96 (Mo. banc 2018). In *Grado*, the Court, without deciding the applicable standard of review, found the offender received effective assistance of counsel under either the meaningful hearing standard utilized in parental termination proceedings or the *Strickland* standard utilized in criminal postconviction proceedings. *Id.* at 898-99 (citing *Strickland v. Washington*, 467 U.S. 1267 (1984)). "Under the 'meaningful hearing' standard, this Court would determine – based on the record on appeal – whether counsel provided [the offender] with a meaningful SVP

17

hearing." *Id.* at 898. "*Strickland* would require [the offender] to show by a preponderance of the evidence: '(1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure.'" *Id.* (quoting *Mallow v. State*, 439 S.W.3d 764, 768-69 (Mo. banc 2014)). "In order to prove the prejudice prong of *Strickland*, the question is whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

*Analysis*

Offender urges the Court to adopt the *Strickland* standard of review and argues his constitutional due process rights are implicated in the probable cause hearing, and he was prejudiced by ineffective counsel at the hearing for failure to object to Dr. Webb's credentials. This Court, however, does not need to adopt a standard of review to address this claim because, as in *Grado*, Offender's claim fails under any standard. The subsequent jury verdict finding Offender a sexual violent predator supplants the probable cause finding and, therefore, Offender cannot show prejudice or lack of meaningful hearing due to his claims of ineffective assistance of counsel at the probable cause hearing.

*Strickland* prejudice requires the petitioner to demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. The evidence presented at trial that results in a verdict against the defendant resolves allegations of deficient evidence presented during a probable cause determination. *United States v. Mechanik*, 475 U.S. 66, 70 (1986) (finding a violation of a grand jury rule meant to ensure

18

probable cause existed is an error cured by a subsequent trial resulting in a guilty verdict).[5]

In an SVP probable cause hearing, the court merely determines if the State's evidence raises a triable issue of fact. *In re Care & Treatment of Tyson*, 249 S.W.3d 849, 852-53 (Mo. banc 2008). A basic showing of probable cause is enough to call to trial the State's SVP allegations. The State's burden at trial is to persuade all members of a jury by clear and convincing evidence that the person in question meets the requirements for SVP commitment – a much higher standard than probable cause.

The alleged deficiencies in Offender's legal representation at the probable cause stage did not prejudice his subsequent trial on the merits. The State presented similar evidence at trial to prove the same elements demonstrated at the probable cause hearing. The jury's verdict finding Offender an SVP means not only that there was probable cause to believe Offender is an SVP but also that he is, in fact, an SVP by clear and convincing evidence. Even if the probable cause finding was based on ineffective assistance of counsel resulting in the admission of excludable evidence, the jury verdict after a fair trial corrects this error and makes reversal and a new trial an inappropriate remedy because Offender suffered no prejudice. Therefore, Offender cannot make the showing of prejudice required by *Strickland* and is not entitled to relief under the *Strickland* standard.

Under a meaningful hearing standard, the "meaningful hearing" is not evaluated on a step-by-step basis but instead represents meaningful opportunity to participate and be

---

[5] This does not mean an otherwise fair trial remedies all errors occurring prior to the trial. If the trial cured the particular error at issue, however, then the defendant has not suffered prejudice. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

heard in the entire judicial process. *Grado*, 559 S.W.3d at 898. If Offender received a meaningful hearing at trial, a deficiency at the probable cause determination cannot prejudice him for many of the reasons articulated in the discussion of the *Strickland* standard. The evidence necessary to establish probable cause was again presented, along with additional evidence, at trial, so Offender cannot say he did not receive a meaningful hearing during the SVP process. The probable cause determination based on the allegedly deficient evidence was supplanted by the jury's verdict. That jury verdict came after opportunity to cross-examine witnesses, present his own evidence, and testify in his own defense. On the entirety of the proceeding, any failure by counsel to object to the qualifications of the end-of-confinement report author did not deprive Offender of a meaningful hearing.[6]

Furthermore, Offender's counsel was not ineffective for failing to object to the end-of-confinement report at the preliminary hearing because Dr. Webb was a licensed psychologist as defined by Missouri law. Section 632.483.2(3), RSMo Supp. 2014, states that the department of corrections "shall provide the attorney general and the multidisciplinary team … with … [a] determination by … a psychologist as defined in section 632.005 as to whether the person meets the definition of a sexually violent predator." Section 632.005(20), RSMo Supp. 2011, defines a "psychologist" as "a person

---

[6] If counsel had objected to the report at the probable cause hearing and the circuit court excluded the report and found no probable cause, this ruling would not have prevented the State from obtaining another report in support of a petition. This further supports the conclusion that Offender received a meaningful hearing despite any alleged failures of counsel at this early stage.

20

licensed to practice psychology under chapter 337 with a minimum of one year training or experience in providing treatment or services to mentally disordered or mentally ill individuals." Section 337.010(4), RSMo Supp. 2008, defines "licensed psychologist" as "any person … who holds a current and valid, *whether temporary, provisional or permanent*, license in this state to practice psychology." (Emphasis added).

Offender concedes Dr. Webb held a provisional license to practice psychology under section 337.010 at the time of the report and at the time of the probable cause hearing. Yet Offender inexplicably argues the report was authored by an unlicensed psychologist. This argument requires a tortured reading of the statute. Provisionally licensed psychologists may evaluate persons and diagnose mental disorders. *Johnson v. State*, 58 S.W.3d 496, 499 (Mo. banc 2001); *see also* § 337.015.3, RSMo 2000. Offender fails to establish an objection to her qualifications at the probable cause hearing would have been meritorious or successful. "[T]rial counsel is not ineffective for failing to make non-meritorious objections." *Zink*, 278 S.W.3d at 188.

Offender also argues counsel was ineffective at the probable cause hearing for failing to raise the issue of Dr. Webb failing a licensing examination. Offender's motion to dismiss, filed the day before trial, alleged Dr. Webb "failed her licensing exam [on] three occasions since the original hearing on this matter." To the extent Offender claims counsel was ineffective for bringing such information to the court's attention at the probable cause hearing, Offender's own motion refutes the suggestion that this information was available at the time of the probable cause hearing. Regardless, any failed attempts at passing the licensure examinations have no relevance to the legal question of her qualification to

21

complete the end-of-confinement report. Dr. Webb was provisionally licensed and considered a licensed psychologist under Missouri law even if she failed licensure examinations. Again, counsel is not ineffective for failing to make non-meritorious objections. *Zink*, 278 S.W.3d at 188. Therefore, Offender cannot establish counsel was ineffective under either the meaningful hearing standard or a *Strickland* standard. *Cf. In re Care & Treatment of Kirk*, 520 S.W.3d 443, 454 (Mo. banc 2017).

**Point V: Juror Nondisclosure**

Offender claims prospective jurors intentionally failed to disclose a bias and belief that his family includes many sexual offenders, depriving him of a fair trial by impartial jurors.

*Facts Relevant to Point V*

After the circuit court took up and overruled Offender's motion for new trial, the court asked Offender's counsel if there was "[a]nything further for the record." Offender's counsel then raised for the first time an issue of juror nondisclosure or misconduct. Offender's counsel alleged a prospective juror during jury selection for Offender's SVP trial approached a lawyer representing Offender's brother in a separate legal proceeding in the courthouse. Specifically, the juror told the attorney representing Offender's brother that "people in that county don't like that family," referring to Offender and Offender's brother's family. According to Offender, these events were memorialized in court documents filed in Offender's brother's case. Offender, however, offered no evidence of this alleged event of juror nondisclosure or misconduct at the hearing on his motion for new trial. In addition, there was no evidence this prospective juror served on the jury in

22

Offender's case, and Offender's counsel conceded at the hearing that the prospective juror did not serve on Offender's jury. Following Offender's arguments, the circuit court remarked about the thoroughness of the jury selection process and declined to change its ruling on the motion for a new trial.

*Standard of Review*

This claim of error was not raised in Offender's motion for new trial. "Unpreserved issues 'can only be reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error.'" *In re Care & Treatment of Braddy*, 559 S.W.3d 905, 909 (Mo. banc 2018); Rule 78.08; Rule 84.13(c).[7]

*Analysis*

Because Offender failed to preserve this issue for appellate review, this Court need not review Offender's allegations of juror nondisclosure. *Nelson*, 521 S.W.3d at 235. But even if Offender had properly preserved this claim, Offender would not be entitled to relief.

"[An offender] alleging juror misconduct during voir dire must present 'evidence through testimony or affidavits of any juror, or other witness either at trial or at the hearing on his motion for new trial.'" *State v. Mayes*, 63 S.W.3d 615, 625-26 (Mo. banc 2001) (quoting *Portis v. Greenhaw*, 28 S.W.3d 436, 445 (Mo. App. W.D. 2001)). Offender failed to offer any evidence to support his claim of juror nondisclosure, and the record does not indicate he was prohibited from presenting such evidence. While trial counsel identified the other proceeding involving Offender's brother, no records or evidence related to the

---

[7] In his opening brief, Offender acknowledges this claim of error was not preserved and requests plain error review.

proceeding were offered in this case to the circuit court. Nor was the circuit court asked to take judicial notice of any order, ruling, or motion from the other proceeding. Even if the allegation that a prospective juror approached a lawyer in a separate legal proceeding in the courthouse and expressed bias as to the Offender's family were proven true, there is no evidence this prospective juror served on the jury, and, in fact, Offender's counsel stated the prospective juror did not. In the absence of additional evidence, there is no record that any juror who ultimately served on the jury failed to disclose a bias against Offender or his family. "Without evidence that the relevant information existed, the trial court could not evaluate whether or not [a prospective juror] intentionally concealed any such information." *Smith*, 944 S.W.2d at 921. Without evidence to establish the facts alleged by Offender, this Court's judgment as to whether intentional disclosure occurred would be mere speculation. Therefore, this Court could not find manifest injustice even if it were inclined to conduct plain error review.

**Point VI: Ineffective Assistance – Change of Venue**

Offender claims ineffective assistance of counsel for failure to investigate the jury pool and failure to move for change of venue.

*Facts Relevant to Point VI*

After Offender's motion for a new trial was overruled, Offender's counsel stated he believed he was ineffective for having not filed a motion to change venue based on the information Offender learned from the separate proceeding involving Offender's brother. Offender now claims trial counsel was ineffective for failing to discover a general bias in the community against him and his family and for failing to move for a change of venue.

24

*Standard of Review*

"Under the 'meaningful hearing' standard, this Court would determine – based on the record on appeal – whether counsel provided [the offender] with a meaningful SVP hearing." *Grado*, 559 S.W.3d at 898. Under *Strickland,* Offender would have "to show by a preponderance of the evidence: '(1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure.'" *Id.* (quoting *Mallow*, 439 S.W.3d at 768-69). To prove prejudice under *Strickland*, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (internal quotations omitted).

"Counsel has a duty to make reasonable professional investigations or to make a reasonable decision that makes particular investigations unnecessary." *Moore v. State*, 827 S.W.2d 213, 215 (Mo. banc 1992). There is a strong presumption that counsel's conduct was reasonable and effective. *Grado*, 559 S.W.3d at 898 (citing *Smith v. State*, 370 S.W.3d 883, 886 (Mo. banc 2012)). To overcome the strong presumption of reasonable and effective conduct, Offender must identify "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Zink*, 278 S.W.3d at 176.

*Analysis*

Again, as in *Grado*, this Court need not determine whether to apply the "meaningful hearing" standard or the *Strickland* standard to resolve this claim because Offender is not

entitled to relief under either standard of review. Offender's trial counsel was not ineffective for failing to discover a general bias against Offender and his family nor for failing to move for a change of venue. Offender argues competent trial counsel would have investigated the jury pool, and an investigation would have revealed that Offender and his family have a reputation in their community as sex offenders. While Offender correctly notes the record does not indicate any such investigation occurred, Offender does not allege the method or scope of investigation reasonable counsel should have undertaken or that such an investigation would have revealed community bias and the necessity for a change of venue. Without evidence showing what steps a reasonable attorney would have taken to investigate any alleged bias, or proof that an investigation would have revealed such a bias, this Court cannot hold the lack of investigation constitutes ineffective assistance under any standard of review.

Moreover, any alleged bias in the community was effectively addressed during jury selection. Counsel posed questions during jury selection regarding familiarity with Offender and Offender's name. Eight prospective jurors responded affirmatively, with several noting they were familiar with Offender's brother and his separate legal problems. All these prospective jurors were struck for cause and did not serve on the jury. As the circuit court noted following its ruling on the motion for new trial, the court "recall[ed] the voir dire process, and thoroughness of the presentation which [counsel] made," "was very impressed with the quality of the defense'" and "believe[d] that [Offender] received fair and … decent representation." No evidence in the record nor presented to the circuit court contradicts the circuit court's observations and findings. Therefore, this Court cannot find

26

Offender failed to receive a meaningful hearing or was prejudiced by ineffective assistance of counsel.

**Point VII: Incomplete Transcript**

Offender claims structural error because of omissions in the trial transcript, which he claims deprives him of complete appellate review.

*Facts Relevant to Point VII*

Due to the lack of a court reporter, the trial in this case was audio recorded and later transcribed by the state court administrator's office. At various points, the audio recordings of the proceedings become inaudible or indiscernible. In those instances, the transcriber marked the transcript with the word "indiscernible." The most extensive segments of indiscernible proceedings include entire sidebar conferences, while some indiscernible sections only omit a single word. Appellate counsel for Offender attempted to obtain a stipulation from trial counsel for both parties as to what took place during the inaudible portions of the transcript but was unsuccessful in doing so.

*Standard of Review*

An appealing party is entitled to a complete transcript for review. *State v. Middleton*, 995 S.W.2d 443, 466 (Mo. banc 1999). "However, a record that is incomplete or inaccurate does not automatically warrant a reversal." *Id.* "[The defendant] is entitled to relief on this point only if he exercised due diligence to correct the deficiency in the record *and* he was prejudiced by the incompleteness of the record." *Id.; see also State v. Dunn*, 817 S.W.2d 241, 244 (Mo. banc 1991), *cert. denied*, 503 U.S. 992 (1992) ("[M]ere speculation that the tape might be of assistance to him on appeal provides no basis for

meaningful appellate review."). Offender must establish prejudice as a result of the inability to present a complete record in that the missing portions prevent appellate review of some or all claims in the brief. *Dunn*, 817 S.W.2d at 244 (citing *State v. Borden*, 605 S.W.2d 88, 91-92 (Mo. banc 1980)).

*Analysis*

Thorough review of the transcript revealed 66 instances of indiscernible audio from the trial. This Court will not individually address all omissions. The smaller omissions are patently unrelated to any of the issues on appeal and do not involve matters or issues that would provide a separate cognizable claim for appellate review. From context, the six indiscernible sidebar conferences also do not concern any of the issues present in this appeal or issues necessitating appellate review. One indiscernible sidebar took place before the State began asking questions during jury selection. An indiscernible sidebar appears to concern prospective jurors who left the courtroom before the court excused the panel during jury selection. Another took place before Offender's counsel began questioning the jury panel during jury selection. One sidebar is bookended by discussion with a prospective juror about bias against Offender if he testified. Another took place during Offender's testimony. The final indiscernible sidebar took place after both parties indicated that they had no additional evidence to present and the circuit court concluded the evidence portion of the trial.

As this Court has established in *Dunn* and *Middleton*, an incomplete record does not, in itself, entitle Offender to a new trial. While Offender's appellate counsel made an effort to fill the gaps for appellate review, this attempt does not save Offender's point nor

28

entitle him to a new trial. Mere speculation that the inaudible portions of the transcript may assist Offender's appeal is insufficient to warrant relief. (*Dunn*, 817 S.W.2d at 244.) Upon this Court's review of the lengthy trial transcript, the indiscernible portions in context do not appear to involve any of Offender's points on appeal or other issues warranting review and, therefore, do not prejudice Offender's appellate review.

## Conclusion

For the reasons set forth above, the circuit court's judgment is affirmed.

_____
W. Brent Powell, Judge

All concur.